UNITED STATES *v.* CENTRAL PACIFIC RAILROAD COMPANY.

1. This case, in all material respects, involves the same questions as *Union Pacific Railroad Company* v. *United States* (*supra*, p. 402), and the court adheres to the conclusion there announced as to the time when the road must be considered as completed, so as to render the company thereafter liable to pay annually five per cent of the  ɜt earnings of the road for the purposes mentioned in the sixth section of the act of July 1, 1862. 12 Stat. 489.

2. The rulings in that case upon the question of the earnings and expenditures of the road, and upon the principles by which the amount of net earnings is to be ascertained and in what manner paid, reaffirmed.

ERROR to the Circuit Court of the United States for the District of California.

The facts are stated in the opinion of the court.

*The Attorney-General* and *Mr. Joseph K. McCammon* for the plaintiff in error.

*Mr. S. W. Sanderson, contra.*

MR. JUSTICE BRADLEY delivered the opinion of the court.

This was an action by the United States against the Central Pacific Railroad Company, to recover five per cent of the

net earnings of the railroad belonging to said company, from the sixteenth day of July, 1869, the date at which it is alleged that the said railroad was completed, to the thirty-first day of October, 1874. The road extends from the termination of the Union Pacific Railroad, at or near Ogden in the Territory of Utah, to the waters of the Pacific; and was constructed under the provisions of the Pacific Railroad Act of July 1, 1862, and the several acts supplementary thereto. It was originally constructed by two corporations of California, namely, the Central Pacific Railroad Company of California, and the Western Pacific Railroad Company; which companies, however, accepted the terms of the said acts of Congress, received subsidies from the government under the same, and were finally consolidated into one corporation under and by virtue of the said acts, by the name of the Central Pacific Railroad Company, which succeeded to all the rights and duties under said acts of Congress which belonged or appertained to the original companies.

On the trial, a jury was waived, and the court found the facts specially; and upon such findings gave judgment for the defendant. The United States brought a writ of error, and the case is now here for review.

The case, in all material respects, involves the same questions which have just been disposed of in the case of *Union Pacific Railroad Company* v. *United States, supra*, p. 402. The same subsidies were granted to the companies in this case, and upon the same terms and conditions, as in that of the Union Pacific Railroad Company; the same acts of Congress, in the main, applying to both. The claim of the government is founded upon that clause in the sixth section of the act of July 1, 1862, which declares that "after said road is completed, until said bonds and interest are paid, at least five per centum of the net earnings of said road shall also be annually applied to the payment thereof." The allegation of the government is, that the railroad was completed on the sixteenth day of July, 1869; and that the net earnings of the road from that time to the thirty-first day of October, 1874, amounted to the sum of $36,732,702. The defendant denies the allegations of the bill; and the principal issue at the trial was, the time

of the completion of the road.  The conclusion of the court from its findings of fact was, that the road was not completed until the first day of October, 1874, and, hence, that the government was not entitled to recover.

It is unnecessary to review all the findings.  The course of proceedings was in all respects similar to what took place in the case of the Union Pacific Railroad Company : similar reports of completed sections by the company under the oath of its president, similar examination and reports of commissioners, and similar acceptances by the President of the United States.  The seventh finding of the court is as follows : —

" VII. That as each section of twenty miles or more of the road was constructed, the president of the company filed a statement, under oath, in pursuance of the statute, to the effect that the section, describing it, had been completed as required, specifying the particulars in the language of the statute, and asking that the commissioners appointed under the statute might be notified, and that they might examine and report upon such section.  Upon a favorable report by the commissioners, the President accepted the section provisionally, and issued to the company the bonds authorized by the statute. This was the course of proceeding till 1868, when it was found that the government might advance all the subsidies upon a road only provisionally accepted in sections, and have no security for its absolute completion, as a whole, up to the standard of a first-class road.  The question of the propriety of this course was submitted to the Attorney-General, who rendered an opinion on Sept. 5, 1868, which was to the effect that the course before pursued by the government was in accordance with the law, and that the President had authority to appoint commissioners to review that portion of the road which had been accepted provisionally, and to refuse a final acceptance of the road as a whole until all the deficiencies should be supplied, and that sufficient subsidies might be withheld, or other guaranties required of the company to secure absolute completion.  The opinion is reported in 12 Op. Att'y-Gen., at page 477, and is referred to and made a part of this finding.  The President thenceforth acted upon this

opinion of the Attorney-General, and accepted each section when provisionally completed, leaving the question of the absolute completion of the road, as a whole, to be determined upon examination and report of commissioners to be specially appointed for that purpose."

This opinion had respect both to the Union Pacific and the Central Pacific roads.

The court then finds that on the 25th of September, 1868, the President, in pursuance of the opinion of the Attorney-General, appointed a commission of civil engineers to examine the entire road, so far as then provisionally completed, and report upon it in accordance with instructions to be furnished by the Secretary of the Interior; that these commissioners made their report on the 14th of May, 1869, pointing out many particulars in which the road as constructed failed to come up to the standard of a first-class road, and estimating that to supply such deficiencies would require a further expenditure of $4,493,380; that the Secretary suspended the grant of lands to the company until further orders, and required it to deposit with the Secretary of the Treasury $4,000,000 of its first-mortgage bonds, to secure the proper completion of the road, under a similar agreement to that made by the Union Pacific Railroad Company; that on the 11th of May, 1869, the connecting rail uniting the Central and Union Pacific railroads was laid, and soon thereafter regular through passenger and freight trains were placed upon the roads between San Francisco and Omaha, and have run regularly between said points ever since; and that on the sixteenth day of July, 1869, and ever since, said roads have been in fact operated as railroads, and have been able to carry, and have in fact carried, all passengers, freights, mails, troops, supplies, and munitions of war offered for transportation between the eastern terminus of the Central Pacific Railroad and the Pacific Ocean. The fourteenth finding is as follows: —

" XIV. That on July 15, 1869, the Secretary of the Interior transmitted to the President the report, dated May 15, 1869, of the commissioners appointed to examine and report upon a section of twenty and three-tenths miles of the Central Pacific Railroad, this being the last section constructed by said defend-

ant.   In his letter transmitting said report to the President for his action, the Secretary says: 'I respectfully recommend the acceptance of the same, and that bonds be issued to the company thereon in accordance with the agreement made with the company, which is to the effect that they deposit their first-mortgage bonds with the Secretary of the Treasury to such amount as may be deemed necessary to secure the ultimate completion of the road agreeably to the provisions of the act approved July 1, 1862.'

"Recommendations in all respects similar to the last had been made by the Secretary of the Interior to the President as to the reports made upon the several preceding sections of the roads, and a similar approval was indorsed thereon by the President.   Upon the same day, July 15, 1869, the Secretary of the Interior made a similar recommendation as to the section-commissioner's reports upon the last sections of the Union Pacific Railroad, in which he recommends a similar provisional acceptance of the section, and adds: '*Provided, however,* that no bonds or patents shall in any event be issued until such security shall be deposited with the Secretary of the Treasury necessary to secure the ultimate completion of the road, agreeably to the acts mentioned in my letter to you of the 27th of May last.'

"This recommendation was approved by the President, and the Secretaries of the Treasury and Interior directed to carry the same into effect.   These constitute the last conditional acceptances of sections as provisionally completed."

By the twenty-fourth and twenty-fifth findings it is found as follows : —

"XXIV.   That in pursuance of the provisions of said acts of Congress hereinbefore mentioned, and at the time of the construction, equipment, and provisional acceptance, as hereinbefore stated, of each and every section of said railroad by either of said railroad companies, the plaintiff issued and delivered to the said Central Pacific Railroad Company of California and to its assignee, the Western Pacific Railroad Company (where the latter was entitled thereto under said acts), except as in these findings otherwise indicated, when some portions were temporarily withheld as security for the

ultimate completion of the road, bonds of the United States of $1,000 each to the amount of forty-eight of said bonds per mile for each such section for one hundred and fifty miles eastwardly from the western base of the Sierra Nevada mountains, and thirty-two of said bonds per mile for all of said' railroad constructed east of said last-mentioned point, and sixteen of said bonds per mile for all of said railroad constructed west of the western base of the Sierra Nevada mountains.

" XXV. That between the first day of July, 1862, and the twenty-seventh day of January, 1870, this plaintiff, in pursuance of said acts of Congress, caused to be issued and delivered to said railroad companies, in the mode and manner and at the times herein set forth, all except five of said $1,000 bonds. That the bonds so delivered by plaintiff to said companies amounted in the aggregate to the sum of $27,850,620."

It was further found that, in pursuance of the joint resolution of Congress, passed April 10, 1869 (as in the case of the Union Pacific Railroad Company), the board of eminent citizens referred to in that case, on the third day of November, 1869, made their report respecting the Central Pacific roads, in which they stated that the amount required to supply deficiencies and complete the work up to the required standard had been reduced since the last commissioners' report from $4,498,380, to $576,650; and the Secretary of the Interior thereupon modified his former order suspending the issue of patents to lands so as to allow patents for one half the lands to be issued, and soon after allowed the withdrawal of said first-mortgage and other bonds, still retaining as security the other half of the lands.

It thus appears that the work of the Central Pacific roads went on *pari passu* with the Union Pacific, and on the same terms and conditions; and that the roads were completed, the subsidy bonds received, and the collateral securities for the ultimate supply of deficiencies given up at the same time in each case.

We do not propose to repeat the views which have already been expressed in the case of the Union Pacific Railroad Company. Our conclusion, with regard to the time of completion of the road is the same in this case as in that. As this is the

only question raised by the record, it is unnecessary to add any thing further.   The question of the amount of earning, and expenditures, and of net earnings deducible therefrom, was not reached by the court below, and is not presented to us for the expression of any opinion.   But as we have indicated our views in the other case, as to the principles on which the amount of net earnings is to be ascertained, and in what manner they are to be paid, the court below, on a re-trial, will be governed by our opinion in that case.

The judgment of the Circuit Court will be reversed, and the cause remanded for a new trial; and it is

*So ordered.*

MR. JUSTICE STRONG and MR. JUSTICE HARLAN dissented.