Commonwealth ex rel. Mathis *v.* Cooper et ux.,
Appellants.

Argued September 16, 1958. Before RHODES, P. J.,
HIRT, GUNTHER, WRIGHT, WOODSIDE, and WATKINS, JJ.
(ERVIN, J., absent).

*Harry R. Back,* for appellants.

No argument was made nor brief submitted for appellee.

114

OPINION BY WATKINS, J., November 14, 1958:

This is a habeas corpus action brought in the Municipal Court of Philadelphia by Anna Mathis, sister of the minor, the relator appellee, against Amy Cooper, maternal aunt of the minor, and Albert Cooper, her husband, the respondent appellants, for custody of Albert Millhouse. This appeal is from the order of the Municipal Court granting the writ and directing the return of the child to South Carolina.

The child is an illegitimate son of Florence Millhouse, deceased, and E. V. Mobly. He was born in Johnston, South Carolina, on August 31, 1954. His mother died January 6, 1956, leaving twelve surviving children. After the mother's death he lived with another sister, Nadine Harris, who presently maintains an eight room house on the grounds of her employer in South Carolina, where two adults and ten minors now live.

Albert was brought to Philadelphia to the home of Anna Mathis and by her placed in the custody of the Coopers. There is a conflict of testimony as to the length of time the child has lived with the appellants. They claim one year, the appellee, several months less than that.

As this is a custody matter, the governing criterion is the welfare of the child: *Com. ex rel. Schofield v. Schofield*, 173 Pa. Superior Ct. 631, 98 A. 2d 437 (1953). Here, the fitness of the appellants for custody was not discussed by the court below but the record indicates that the child was well cared for during the time the Coopers had him.

Probation officers indicated that the appellants were not cooperative when they wanted to investigate their home but the record also indicates that the appellants were under the impression that the officers were at their home to take the child away. The record

discloses that the home of the appellants is a three room apartment where they and the child live and that it is adequate.

There is a conflict of testimony concerning the fitness of the appellee but this is clearly irrelevant because the court below directed the child to be returned to South Carolina into the custody of Nadine Harris who lived with her husband, whose name does not appear, and ten other children. The appellee did not seek custody.

Judge SPALDING, in his opinion, indicates that his decision was determined by his belief of the appellee and her witnesses and his lack of confidence in the testimony of the appellants and the putative father. We would be persuaded to agree with the court below as to the weight and credibility of these witnesses as he has had the advantage of hearing and seeing them. However, there was no testimony or evidence of any kind as to the fitness of Nadine Harris or her husband for custody. They did not appear and the record is silent as to their respective characters, as well as their willingness, desire and capacity for custody of the four year old child. There is no evidence of their employment and their earnings, except some hazy hearsay that Nadine is employed as a housekeeper and the husband for some wood company.

In *Com. ex rel. Kraus v. Kraus*, 185 Pa. Superior Ct. 167, 138 A. 2d 225 (1958), where this Court reversed in a custody case, one of the reasons for the decision, as indicated by Judge WRIGHT, at page 174, was the failure of any testimony in the record concerning the husband of the one to whom custody was awarded, "He was not called as a witness and there is no competent testimony concerning his attitude toward Leroy. It is in this home that the lower court would place the child.". Here, neither party to whom custody

was awarded appeared to be examined by the court and the parties.

As to the adequacy of the home to which the award of custody was made, again there is only a sketchy description by the only witness who ever saw it. He testified that "they had an eight room house"; "I don't know how many bedrooms they had"; "there was a living room and a kitchen I suppose"; "there wasn't any upstairs, it was all on one floor". The only thing that seems to be definite in the record was that there were at least two adults and ten children occupying the home to which this child was to be sent.

The court below indicated that his decision was also determined by a report "from the Department of Public Welfare of Edgefield County, South Carolina, which relates favorably on the home conditions under which the child would live if he were returned to the custody of his sister, Nadine Harris. Such a report must be given consideration."

Ordinarily reliance by the court on reports of court investigators concerning the condition of the parties' respective homes constitutes reversible error: *Com. v. Rubertucci*, 159 Pa. Superior Ct. 511, 49 A. 2d 269 (1946). See also *Com. ex rel. Mark v. Mark*, 115 Pa. Superior Ct. 181, 175 A. 289 (1934); *Com. ex rel. Balick v. Balick*, 172 Pa. Superior Ct. 196, 92 A. 2d 703 (1952). Here, however, the report does not appear anywhere in the record so that it is impossible for this Court to consider it, and as the court below relied upon it, constitutes reversible error.

Under this record, we are unable to perceive how it was possible for the court below to find "we are convinced that it is for the best interest of the child to be returned to South Carolina where he will be reared in wholesome, healthy surroundings and where he will

have the benefit of being reared with his brothers and sisters."

The order is reversed and it is ordered and decreed that Albert Millhouse remain in the custody of Amy Cooper.