429 A.2d 671

**In the Interest of Tina JONES, Age 11; Jameeda Jones, Age 9; Kevin Jones, Age 3.**

**Appeal of Margaret JONES.**

Superior Court of Pennsylvania.

Argued Nov. 13, 1979.

Filed May 8, 1981.

James E. Mahood, Pittsburgh, for appellant.

Shari F. Shink, Pittsburgh, for appellees.

Loraine S. Tabakin, Assistant County Solicitor, for participating party.

Before PRICE, HESTER and CAVANAUGH, JJ.

CAVANAUGH, Judge:

■ The dispute in this case concerns the custody of two children, Tina and Jameeda Jones.[1] In 1976 the children were adjudicated dependent pursuant to a petition by the Child Welfare Services and were removed from their mother's custody with direction that they were to remain in placement pending further disposition. Both girls were placed with their maternal aunt, Ernestine Taylor. The mother continued to maintain regular contact with the children since their placement. At the same time she underwent psychiatric care and counselling. Considering herself rehabilitated and competent to care for her children, the mother petitioned for a hearing in order to regain custody. A dispositional hearing[2] was held and the lower court con-

1. Although the caption in this case includes the name of Kevin Jones, Kevin was not a party to this action. Following his birth Kevin was immediately placed in a foster home and has never been in his mother's custody.

2. The appellant refers to the hearing in the lower court as a "Rehearing of the Dispositional Order of June 9, 1976". By that order Children and Youth Services were given permission to place Tina and Jameeda with their maternal aunt, Ernestine Taylor. Because a finding of dependency had already been made, there can be no dispute but that the rehearing, which is the subject of this appeal, was a dispositional hearing. This distinction is significant.

At the initial finding of dependency the required proof must be clear and convincing. "It is a serious matter for the long arm of the state to reach into a home and snatch a child from its mother. It is a power which a government dedicated to freedom for the individual should exercise with extreme care and only where the evidence clearly establishes its necessity. Yet, of course, there are cases where such authority must be exercised for the protection and welfare of the children." *Rinker Appeal,* 180 Pa.Super 143, 148, 117 A.2d 780, 783 (1955). Because the hearing in the instant case was dispositional, this burden is lessened. As this Court explained in *Stapleton v. Dauphin County Child Care Service,* 228 Pa.Super. 371, 387, 324 A.2d 562, 571 (1974): "This is so because the reasons for the standard [of clear and convincing] . . . no longer exist. The family, which the standard is designed to protect, has already been wrenched apart; the unity that was being protected has been destroyed. The Commonwealth no longer appears as a party in a contest between the State and the parents but rather as an arbitrator, who is required to decide only what is in the best interests of the child." *See also Matter of DeSavage,* 241 Pa.Super. 174, 360 A.2d 237 (1976).

cluded that the best interests of the children would not be served by an award of custody to the mother. We reverse and remand.

■ The question before us is whether a parent in a dispositional hearing has a constitutional right under the due process clause to confront and cross-examine adverse witnesses. We hold that the parent has such a right and that the procedure followed by the lower court did not adequately comport with the mandates of due process.

■ A review of the record reveals that but for the adverse resolution of one factual issue, all parties would have favored, and the lower court would have ordered, the return of the children to the mother, if not immediately, then through a period of extended visitation to facilitate readjustment. This key factual issue was whether the mother was continuing her involvement in a lesbian relationship with a male impersonator, Aznif Smith.

The record is replete with testimony as to the harmful influence Smith has had on the children and their mother. At the time of the removal of the children from the mother's custody by the Child Welfare Service Aznif Smith was living with the mother. According to testimony Smith assumed the alias "Hendren Bower" and it was believed that the mother and Smith were "married" in November or December of 1975. In December of 1975 the mother, while well advanced in pregnancy, was pushed down a flight of stairs by Smith. Soon after, on December 11, Kevin was born. Smith was adjudicated delinquent and came under the supervision of the Juvenile Court. According to the children's maternal grandmother, the children, especially Jameeda, became emotionally disturbed by the mother's relationship with Smith. Although the children wanted to return to their mother's custody, they were fearful that Smith would be there. During the judge's interview with the children it was determined that they preferred to visit with the mother before going back to her permanently so that they would be certain that Smith was not there.

The mother maintained that she had not seen Smith for approximately two years and had no idea of her whereabouts. However, counsel for the Children and Youth Services called Ernestine Taylor, the children's maternal aunt with whom the girls had resided since their removal from the mother's home. Mrs. Taylor testified that she had been getting reports from an unnamed source that the relationship between the mother and Smith was continuing.

The judge permitted this testimony over objection despite Mrs. Taylor's refusal to name the source of these reports. As a result of this information the social worker for Children and Youth Services stated to the court that, although she had intended to recommend that the girls be placed in the mother's custody, in view of Mrs. Taylor's testimony, she recommended further investigation. A hearing was scheduled so that the unnamed witness could be examined. Mrs. Taylor stated that the person would only appear if permitted to remain anonymous.

A second hearing was held at which time the trial judge overruled the objections raised by appellant's counsel and permitted the anonymous witness, Mr. C., to testify *in camera* in the absence of appellant.[3] The children's attorney, the Children and Youth Services caseworker, the Children and Youth Services attorney and the mother's attorney were present at this hearing. At the hearing the identity of Mr. C. and his relationship to the mother was revealed.[4] However, the witness's identity was not revealed to the appellant. Mr. C.'s testimony was that the appellant and Smith continued to maintain a relationship and that the relationship was at times violent. At a third hearing appellant presented rebuttal testimony. The trial judge, however, found against the mother and stated:

3. The notes of testimony were lost before they were transcribed. Pursuant to Pa.R.A.P., Rule 1926, counsel have filed a stipulation as to the material portions of Mr. C's testimony.

4. The identity of Mr. C., however, does appear of record in the stipulation by counsel of the material portions of Mr. C's testimony. Also the brief filed on behalf of the children by Child Advocacy Legal Aid disclose the identity of Mr. C.

The Court upon the early reports of Child Welfare Services was completely willing to begin a transition of the children from the home of the maternal aunt to that of the mother, but the continuing investigation and the very strong credible in-court, under oath testimony from Mr. C. subject to intensive cross examination by plaintiff's lawyer, convinced this court beyond any doubt that a very disruptive influence is present in the life of the mother. Custody of the children was awarded to the Child Welfare Services.

On appeal the mother argues that the proceedings below did not adequately protect her right to due process because she has a right to personally confront the witness presenting evidence contrary to her interests. She claims that the fact that her attorney learned of Mr. C.'s identity and had an opportunity to cross-examine him—absent her own knowledge of Mr. C.'s identity—is insufficient protection of her constitutional rights.

The facts of this case raise a difficult question as to the nature of the parent's right to due process in a dispositional hearing. The answer to this question is most troublesome in that it involves the delicate determination of when the integrity of the family may be sacrificed in an effort to protect its individual members.

The proceedings in the lower court were governed by the Juvenile Act, 42 Pa.C.S.A. § 6301 et seq.

In adopting the "Juvenile Act" the legislature stated that the Act shall be interpreted and construed as to effectuate certain purposes:

(1) To preserve the unity of the family whenever possible and to provide for the care, protection, and wholesome mental and physical development of children coming within the provisions of this chapter.

.  .  .  .  .

(3) To achieve the foregoing purposes in a family environment whenever possible, separating the child from parents only when necessary for his welfare or in the interests of public safety.

(4) To provide means through which the provisions of this chapter are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced.

42 Pa.C.S. § 6301. Only with these purposes in mind can we properly address the issue before us. As this court stated in *Interest of LaRue,* 244 Pa.Super. 218, 222, 366 A.2d 1271, 1273 (1976), "The fundamental principle, from which all other principles in custody cases derive, is that a child grow up as part of its natural family."

## I

Appellant's assertion that she has a right to confront and cross-examine adverse witnesses at a dispositional hearing is novel. Unlike the right of a criminal defendant to confrontation, it is established that such rights are *not* universally applicable to all hearings. *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). In *Wolff v. McDonnell, supra,* the United States Supreme Court stated:

Rules of procedure may be shaped by consideration of the risk of error. *In re Winship,* 397 U.S. 358, 368, 90 S.Ct. 1068, 1074, 25 L.Ed. 368 (1970) (Harlan, J., concurring); *Arnett v. Kennedy, supra,* 416 U.S. at 171, 194 S.Ct. at 1652 (White, J., concurring in part and dissenting in part), and should also be shaped by the consequences which will follow their adoption.

418 U.S. at 567, 94 S.Ct. at 2980, 41 L.Ed.2d at 957. Thus appellant's claim of right must be examined by employing this analysis.

In a case such as this, where the parent's right to custody hinges on the factual determination of the child's best interest, the risk of error cannot be overstated. As the Supreme Court stated in *Goldberg v. Kelly,* 397 U.S. 254, 268, 90 S.Ct. 1011, 1021, 25 L.Ed. 287, 299 (1970), "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." (citations omitted). In

*Goldberg*, the court held that before public assistance payments are terminated due process requires that an evidentiary hearing be held. The evidentiary hearing must afford the welfare recipient the opportunity to confront and cross-examine the witnesses relied on by the Department. Earlier in *Greene v. McElroy*, 360 U.S. 474, 496–97, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377, 1390–91, the Supreme Court underscored the importance of confrontation where questions of fact are to be determined:

> Certain principles have remained relatively immutable in our jurisprudence. One of these is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is important in the case of documentary evidence, *it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness intolerance, prejudice, or jealousy.* We have formalized these protections in the requirements of confrontation and cross-examination. (Emphasis added).

Consistent with the language of *Goldberg* and *Greene*, this court has held that "[t]he right of a litigant to in-court presentation of evidence is essential to due process[.]". *Wood v. Tucker*, 231 Pa.Super. 461, 463, 332 A.2d 191, 192 (1974). *Wood v. Tucker* involved a child custody dispute between the father and the maternal grandparents. There we held that the lower court had denied the grandparents due process by considering "ex parte" reports from former employees of the father's present wife and from a social agency that investigated the adequacy of the father's home. *Wood v. Tucker* is one of a long line of child custody cases which have held that a violation of the right to confrontation and cross examination occurs when the court considers matters not of record in reaching its decision. As we stated in *Com. ex rel. Oncay v. Oncay*, 153 Pa.Super. 569, 570, 34 A.2d 839 (1943):

We must point out again, however, that reports of investigators, agents and doctors cannot be received in evidence, or considered by the court in a contested case.... The investigators, agents, doctors, etc., must themselves be produced, sworn and examined as witnesses and be subject to cross examination, just as all other witnesses (citations omitted).

See also Interest of LaRue, supra, 244 Pa.Super. at 238 n. 4, 366 A.2d at 1281 n. 4, (Hoffman, J. dissenting); Com. ex rel. Mathis v. Cooper, 188 Pa.Super. 113, 146 A.2d 158 (1958); Com. ex rel. Balick v. Balick, 172 Pa.Super. 196, 92 A.2d 703 (1952).

It may be argued that unlike the situation in Wood v. Tucker where the reports considered by the court were not even of record, the procedures employed in taking the testimony of Mr. C. sufficiently protected the interests of appellant so as to minimize the risk of error. Appellees assert that Mr. C.'s testimony was not ex parte affidavit; that he testified under oath on the record, and before the judge who had a full opportunity to make a determination as to the witness's credibility. Also he was cross-examined by appellant's counsel. While we agree that, short of disclosing Mr. C.'s identity, the lower court did all it could to ensure that appellant's interests were protected, appellant was denied the most important cross-examination tool: knowledge of the witness's identity and with it any bias which could prompt the witness to testify as he did. Thus appellant was precluded from questioning Mr. C. to determine whether his testimony was "motivated by malice, vindictiveness, intolerance, prejudice, or jealousy." Greene v. McElroy, supra.

That the court found "nothing adverse in the witness' demeanor, no attempt to be punitive or vicious" does nothing to aid in this inquiry. In order to determine the credibility of this witness and the value of his testimony, the party adversely affected by his testimony must be informed of his identity and thus be given the opportunity to bring forth any possible bias motivating the damaging testimony.

In its opinion the lower court stated that the procedure it employed permitted it to make a comprehensive and searching inquiry in the face of Mr. C.'s refusal to testify if his identity were to be revealed to the appellant. The question that must be answered, then, is whether the possible consequence of not having Mr. C's testimony justifies the absence of the opportunity to confront the witness.

Thus we must consider the "consequences which will follow" if we were to hold that due process requires that the parents be afforded confrontation rights at dispositional hearings.

Turning once again to the facts of this case, it is not disputed that there exists a strong possibility that the children would be harmed by further association with Aznif Smith. It is also not disputed that absent the disturbing influence of Smith the children enjoy a good and loving relationship with their mother. As noted above, prior to learning of Mr. C.'s allegations the Children and Youth Services caseworker had intended to recommend that custody of the children be returned to the mother. Also the hearing judge had been willing to begin a gradual return of the children to appellant. Thus the information furnished by Mr. C. was critical to the court's final determination.

Evidence of such importance must be subjected to close scrutiny so that the proper disposition is made. Appellees argue that the best interests of the children should not be sacrificed in order to protect the rights of the parents. We agree that the utmost concern is for the children's welfare. It is for this reason that nothing short of the "comprehensive and searching inquiry into the facts" mandated by decisions of this court will be acceptable. *See In re Clouse*, 244 Pa.Super. 396, 368 A.2d 780 (1976); *Commonwealth ex rel. Grillo v. Shuster*, 226 Pa.Super. 229, 312 A.2d 58 (1973). The right to confrontation asserted by the mother is a claim of real constitutional substance. However, the rights of the parent to due process in a situation such as this are intimately intertwined with the best interest of the child or children. It may be argued that without the opportunity for *in camera*

disclosure, Mr. C. would not have testified and as a result the children would have been returned to a damaging environment. An equally possible consequence, however, is that by relying upon Mr. C.'s testimony, absent an adequate opportunity to test his truthfulness, the court could deprive the parent of custody of her children where such deprivation is not warranted. In so doing, the children would suffer the deprivation no less than the mother.

We hold, therefore, that after considering the risk of error and the consequences which will follow the procedure adopted by the lower court, the mother has been deprived of due process.

## II

The second question we must address is whether the Juvenile Act authorizes the procedures followed by the lower court. 42 Pa.C.S.A. § 6341(d) is the pertinent section and it provides as follows:

(d) Evidence on issue of disposition.—In disposition hearings under subsections (b) and (c) all evidence helpful in determining the questions presented, including oral and written reports, may be received by the court and relied upon to the extent of its probative value even though not otherwise competent in the hearing on the petition. The parties or their counsel shall be afforded an opportunity to examine and controvert written reports so received and to cross-examine individuals making the reports. Sources of information given in confidence need not be disclosed.

Except for § 6341(d) the Juvenile Act is silent on the rules of evidence to be applied. As has been observed, however, in § 6341(d) "there is an indication that traditional rules are to apply with some relaxation after an adjudication on the merits has been made." *Anderson Appeal*, 227 Pa.Super. 439, 447, 313 A.2d 260, 264 (1973) (Spaeth, J. dissenting). The question before us, then, is whether the Act contemplates a relaxation such as that permitted by the court below.

■ Initially we note that in construing a statute, sections of the statute must be construed with reference to the entire statute and not alone. *Keitt v. Ross,* 17 Pa.Cmwlth. 183, 331 A.2d 582 (1975). 1 Pa.C.S.A. § 1922. The court must determine legislative intent from the totality of a statute and render an interpretation which gives effect to all of its provisions. *Wolfe v. Commonwealth, Department of Transportation, Bureau of Traffic Safety,* 24 Pa.Cmwlth. 261, 355 A.2d 600 (1976). 1 Pa.C.S.A. § 1921(a).

Appellees contend that the Act does not require that confidential informants testify in person or that all parties be present at dispositional hearings. Appellees state that the requirements of the Act are satisfied if a party's counsel is present and afforded an opportunity to controvert written reports and cross-examine witnesses. § 6341(d) states in part: "The parties or their counsel shall be afforded an opportunity to examine and controvert written reports so received and to cross-examine individuals making reports." Contrary to appellees' argument, this language does not address the situation where an anonymous informant refuses to testify in person. Rather, the language codifies a long line of cases condemning the practice in the trial courts of relying on extra-judicial reports without taking testimony and without giving the parties an opportunity to cross-examine the individual who made up the report and/or to present rebuttal testimony. *See e. g. Rummel v. Rummel, supra; Wood v. Tucker, supra.*

Because the situation before us does not involve written reports, support for appellee's position that the Act does not require the confrontation of witnesses at a dispositional hearing must be found in other language within § 6341(d).

■ Initially § 6341(d) states: "In disposition hearings under subsections (b) and (c) all evidence helpful in determining the questions presented, including oral and written reports, may be received by the court and relied upon to the extent of its probative value even though not otherwise competent in the hearing on the petition." To interpret this language as permitting evidence to be introduced despite the

fact that its admission violates the constitutional rights of a party is to give far too expansive a reading to the phrase "otherwise competent". Certainly the situation may arise where, although the rules of evidence do not permit testimony to be received by the court, such testimony would be properly admitted under § 6341(d). However, that situation does not arise where, as here, the reception of the evidence violates due process.

■■■ Finally, § 6341(d) states, "Sources of information given in confidence need not be disclosed." Indeed this language is troublesome and may be read to support appellees' argument that the procedure followed by the lower court was authorized by the statute. As the discussion in part one of this opinion indicates, nondisclosure of the identity of Mr. C. deprived the appellant of an opportunity to cross-examine the informant. Since we hold that in the instant case the mother had a right under the due process clause to confront and cross-examine the informant, in so far as the statute permits otherwise, it is unconstitutional. We so hold mindful of the fact that a presumption of constitutionality is accorded to legislative enactments and they will not be declared unconstitutional unless they clearly, palpably, and plainly violate the Constitution. *Driscoll v. Plymouth Township*, 13 Pa.Cmwlth. 404, 320 A.2d 444 (1974). 1 Pa. C.S.A. § 1921(a). The statement that sources of information need not be disclosed is, in fact, clearly, palpably, and plainly violative of the Constitution in its unqualified allowance of testimony into evidence regardless of the opportunity provided to test the veracity and reliability of the declarant.

■■ As a final note, the arguments raised by appellees as to the admissibility of the testimony of Ernestine Taylor must be addressed. As set forth above, Ernestine Taylor testified that she had learned from an unnamed source that the association between the mother and Aznif Smith was continuing. In view of our holding that the reception into evidence of Mr. C.'s testimony violated the due process rights of the appellant, it can hardly be argued that Mr. C.'s

testimony can be admitted indirectly through the hearsay testimony of Ms. Taylor. Whether § 6341(d) permits the introduction of hearsay evidence in dispositional hearings we do not decide. However, we do hold that where the reception of hearsay evidence would deprive the parent of an opportunity to confront and cross-examine a witness, such evidence may not be admitted.

Case reversed and remanded for a new dispositional hearing.

Reversed and remanded.

HESTER, J., files dissenting opinion.

HESTER, Judge, dissenting:

The majority concludes not only that appellant's due process rights were infringed, but also that part of the Juvenile Act is unconstitutional. Due to my inability to agree with either conclusion, I must dissent.

This case had its genesis in 1976 when the children were adjudicated dependent pursuant to a petition by the Child Welfare Services, and were placed with the maternal aunt, Ernestine Taylor. The record indicates that at that time, the appellant-mother was in need of psychiatric care and had in fact been a patient at the Western Psychiatric Institute in Pittsburgh following threats to kill herself and her daughter Jameeda. It further appears that appellant was living with a 17 year-old female, one Aznif Smith, who impersonated a male; that appellant and Miss Smith had been "married" sometime in 1975; that the children were forced to call Miss Smith "daddy"; that Smith exhibited violent tendencies, particularly toward appellant; and that the adverse emotional impact of the lesbian relationship upon the children necessitated their removal from appellant's home at that time.

On November 29, 1978, appellant requested a rehearing on the custody issue, contending that she had "undergone positive psychological evaluation and has been determined competent to properly care for the children." At the hearing on

December 20, 1978, it was established that appellant now lives in a comfortable apartment with three bedrooms and a combination living room-dining room and is supported by public assistance. A psychiatric report was received indicating appellant had stabilized and was capable of performing her functions as a parent. In addition, it was alleged that Aznif Smith was no longer with appellant and that the two had had no contact with each other for the past two years. *In camera* examination of the children revealed that both girls were desirous of rejoining their mother but were extremely apprehensive of the possibility that Aznif Smith, whom they feared, may still be residing in that home. Appellant gave repeated assurances to the court that she was indeed living alone now and that Smith was out of her life. Counsel for Children & Youth Services then called as a witness Ernestine Taylor, the maternal aunt in whose custody the children had resided for the past two years. Miss Taylor testified that she had been informed by an anonymous witness that Aznif Smith was still residing with appellant and was still known as appellant's "husband". Counsel's objection to this testimony on hearsay grounds was overruled. She further stated that the children are afraid of returning to their mother's custody if Smith is in any way involved. In view of this testimony, the court ordered that the children remain with Miss Taylor pending further investigation of her allegations and afforded Children & Youth Services an opportunity to produce the anonymous witness to whom Miss Taylor referred. It was stated that this witness did not wish his identity to be revealed to appellant and in fact would not testify in appellant's presence. The court ordered that this witness could testify on the record in the presence of all counsel with the right of a subsequent hearing on the part of appellant and her counsel to refute any statements made by the witness.

On December 27, 1978, Mr. C. appeared with all counsel present but with appellant excluded from the courtroom, over her counsel's objection. He stated that he had known both appellant and Miss Smith for a number of years; that

he visits appellant's home weekly to get his hair styled by her; that he has in this manner learned appellant continues to see Smith and refers to her as "husband"; and that he is aware of violence on the part of Smith toward appellant, necessitating at least one period of hospitalization of appellant.

A third hearing was held on January 3, 1979 to allow appellant to rebut these allegations. Aznif Smith appeared and denied any involvement with appellant over the preceding two years and stated she had never been "married" to appellant or ever been known as her husband. Appellant and her mother also testified and reiterated that Miss Smith was not involved with appellant at that time and that "nothing comes before [the] kids." N.T. 1/3/79, p. 39.

The court took all the testimony under consideration and found that the relationship between appellant and Miss Smith continues to exist; that the children are very fearful of Smith and do not want to live in the same house with her; that Smith is a serious emotional and potentially physically harmful influence on the children; and that the best interest of the children would be served if they remained in the custody of the maternal aunt. Appellant does not now dispute the fact that if Miss Smith is still involved with her, then the children should not be returned to her. Her contention is that the *in camera* hearing of Mr. C., from which she was excluded, violated her right to confront this witness, denying her due process of law.

Preliminarily, we note that the court, in determining the best interests of the children in question, applied the correct legal standard in a proceeding of this sort. Once the child has been wrested from the parents in a dependency proceeding, then any further effort by the parents to regain custody will be judged according to the child's best interest, as in any custody case. *Interest of LaRue*, 244 Pa.Super. 218, 366 A.2d 1271 (1976); *Stapleton v. Dauphin County Child Care Service*, 228 Pa.Super. 371, 324 A.2d 562 (1974).

The Juvenile Act, Act of July 9, 1976, P.L. 586, No. 142, § 2 (42 Pa.C.S.A. § 6301 et seq.), sets forth a two-step

procedure in any dependency proceeding. In the first, or adjudicatory, stage, the court determines whether, by clear and convincing evidence, the child is "dependent" as defined in § 6302; see, § 6341(c). If a finding of dependency is made, then the court, in the second, or dispositional, stage, may separate the child from the parents if such action is clearly necessary, 42 Pa.C.S.A. § 6301(b); *Interest of Black*, 273 Pa.Super. 536, 417 A.2d 1178 (1980); *Interest of Pernishek*, 268 Pa.Super. 447, 408 A.2d 872 (1979); *In Re Whittle*, 263 Pa.Super. 312, 397 A.2d 1225 (1979), or may order any placement authorized in § 6351 of the Act; cf. *In Re DeSavage*, 241 Pa.Super. 174, 360 A.2d 237 (1976). Sec. 6341(d) describes the type of hearing the court conducts in the dispositional stage:

(d) Evidence on issue of disposition—In disposition hearings . . . all evidence helpful in determining the questions presented, including oral and written reports, may be received by the court and relied upon to the extent of its probative value even though not otherwise competent in the hearing on the petition. The parties or their counsel shall be afforded an opportunity to examine and controvert written reports so received and to cross-examine individuals making the reports. Sources of information given in confidence need not be disclosed.

The parties herein do not dispute that the hearings below were dispositional, as the finding of dependency and separation from family occurred sometime ago. See, *Stapleton*, supra. In such a hearing, the strict formalities of evidence are relaxed in favor of a "comprehensive and searching" inquiry into all relevant evidence. *In Interest of Clouse*, 244 Pa.Super. 396, 368 A.2d 780 (1976). Thus, evidence "not otherwise competent" is admissible; confrontation between a party and witness is not required so long as the party's counsel is afforded such an opportunity; and sources of confidential information need not be made known to a party. On its face, Sec. 6341(d) authorized the procedure utilized by the lower court: appellant was prevented from directly confronting and learning the identity of the anonymous

witness, but her counsel fully and effectively cross-examined
him. The crucial testimony of this witness would not other-
wise have been available for he had refused to testify in the
presence of appellant. I would thus find the *in camera*
hearing conformed in all respects with the liberal procedures
of Sec. 6341. The majority concludes that the last sentence
of Sec. 6341(d) is constitutionally defective "in its unquali-
fied allowance of testimony into evidence regardless of the
opportunity provided to test the veracity and reliability of
the declarant." At 678. The majority's holding, however,
reaches too far because in the instant case there were a
wealth of measures employed to assure the "veracity and
reliability" of the declarant, Mr. C. Thus, as I shall now
discuss, appellant's right to confront the witness was ade-
quately protected in consonance with the constitution. I
would hold the statute is valid.

Were this a criminal proceeding, appellant would have the
undoubted right to confront and cross-examine adverse wit-
nesses. *Bruton v. U. S.*, 391 U.S. 123, 88 S.Ct. 1620, 20
L.Ed.2d 476 (1968); *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct.
1065, 13 L.Ed.2d 923 (1965). The U.S. Supreme Court has
stated, however, that the due process right of confrontation
is not universally applicable to all hearings. *Wolff v.
McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935
(1974). "Rules of procedure may be shaped by consideration
of the risks of error [and] by the consequences which will
follow their adoption." id, at 567, 94 S.Ct. at 2980, citing,
*Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15
(1974). Thus, our courts have held that there is no guaran-
teed right of confrontation in a hearing to determine the
competency of an accused to stand trial. *Commonwealth v.
Bruno*, 435 Pa. 200, 255 A.2d 519 (1969); nor is there such a
guarantee in prison disciplinary proceedings. *Wolff; Rob-
son v. Biester*, 53 Pa.Cmwlth. 487, 420 A.2d 9 (1980). Simi-
larly, in the sensitive area of juvenile proceedings, we have
sanctioned the use of *in camera* examination of children in
custody cases out of the presence of the contending parties.
*Sipe v. Shaffer*, 263 Pa.Super. 27, 396 A.2d 1359 (1978);

*Commonwealth ex rel. Grillo v. Shuster*, 226 Pa.Super. 229, 312 A.2d 58 (1973). And, once the adjudication stage is completed in a delinquency hearing, the child may properly be excluded from the courtroom while the judge determines the appropriate disposition. 42 Pa.C.S.A. § 6336(d); cf. *In Re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). These procedures stem from the sensitive nature of the proceeding, viz: "to provide for the care, protection, and wholesome mental and physical development of children." 42 Pa.C.S.A. § 6301(b)(1); *Custody of Hernandez*, 249 Pa.Super. 274, 376 A.2d 648 (1977); cf. *Rinker Appeal*, 180 Pa.Super. 143, 117 A.2d 780 (1955). Indeed, the Supreme Court has recognized that in the search for the child's best interest, certain natural rights of the parents may sometimes be subordinated.

No doubt in some instances the best interests of the child are served by awarding custody to a non-parent. Experience has taught the unhappy lesson that the parental relationship is not an infallible guarantee that the parent will provide the care and concern essential to a child's proper development.

*Ellerbe v. Hooks*, 490 Pa. 363, 368, 416 A.2d 512, 514 (1980). "It must be emphasized that the cardinal concern in all custody cases is the best interest and permanent welfare of the child." *Albright v. Commonwealth ex rel. Fetters*, 491 Pa. 320, 323, 421 A.2d 157, 158 (1980).

I am satisfied in the instant case that appellant's due process rights were not infringed. The "risks of error" in admitting Mr. C's testimony were minimized by counsel's cross-examination and by the fact that, in large part, the witness' statements were corroborated by other evidence. Moreover, in a subsequent hearing, appellant was afforded the opportunity to present any evidence she wished to rebut Mr. C's allegations. There was thus an "adequate bases of decision" without the necessity of direct confrontation. *Baxter v. Palmigiano*, 425 U.S. 308, 322, 96 S.Ct. 1551, 1559, 47 L.Ed.2d 810 (1976). The "consequences which [would] follow" the presence of appellant in the courtroom during

the witness' testimony were at all times manifest: the witness would have simply refused to appear. The children would have been returned to their mother even though Miss Smith was still apparently involved with her.

> The children in their expressions of concern to the Court, particularly Tina, indicated a great fear of Aznif Smith, based on the recollections of her involvement with the family prior to removal of the children. There was testimony that when the children went to visit the mother pursuant to court directions, they scampered about the house looking under beds and in closets to determine whether or not Aznif Smith was present.

Opinion of lower court at 11. Faced with such a possibility, the court could not have simply ignored evidence suggesting the relationship between the two women was continuing. Rather, consistent with its duty to make a comprehensive inquiry into the children's best interests, the court took the testimony of Mr. C. while protecting his anonymity and at the same time affording appellant the right of cross-examination through her attorney. "[A]t least in civil cases, the right [of cross-examination and confrontation] is not all pervasive that it automatically forecloses the possibility that competing consideration may be of equal magnitude." *Treharne v. Callahan*, 426 F.2d 58, 62 (3 Cir., 1970). Here, the "competing consideration" is the very real probability that two children will be thrust back into an environment which they greatly fear with grave consequences to their welfare.

Given the nature of the proceeding, the peculiar circumstances surrounding appellant's background, and the steps taken to assure reliability of Mr. C's testimony I cannot say the court committed error.

Appellant also contends the court erred during the hearing of December 20, 1978 when it allowed the maternal aunt to give hearsay testimony relating to the anonymous witness. However, whatever error may have occurred was certainly cured when Mr. C. actually appeared and testified at the next hearing.

In child custody cases, we require the hearing judge to file in every case a comprehensive opinion reflecting a thorough analysis of the record and specifying the reasons for its ultimate decision. *Grillo*, supra; *Bender v. Bender*, 261 Pa.Super. 12, 395 A.2d 279 (1978). Moreover, the judge should receive evidence from objective, disinterested witnesses. *Gunter v. Gunter*, 240 Pa.Super. 382, 361 A.2d 307 (1976); *Augustine v. Augustine*, 228 Pa.Super. 312, 324 A.2d 477 (1974). Where the court has complied with these requirements, his decision is entitled to "great weight". *Clouse*, supra, and will not ordinarily be reversed absent an abuse of discretion. *McCourt v. Meyers*, 268 Pa.Super. 152, 407 A.2d 875 (1979).

Instantly, the hearing judge fully complied with these requirements. Three separate counsel appeared and participated in the hearings.[1] A social worker familiar with the case testified and the record shows other caseworkers were also present. The lengthy opinion filed (13 pages) reflects the court's careful consideration of all pertinent evidence. I could not disturb the ruling below.

---

1. Appellant, the children, and Children and Youth Services were each represented by a separate lawyer.