J-A30004-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: S.R., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.H., MOTHER | |
| | No. 328 MDA 2016 |

Appeal from the Order Entered January 25, 2016
In the Court of Common Pleas of Schuylkill County
Juvenile Division at No(s): CP-54-DP-0000051-2013

BEFORE: BOWES, OLSON AND STABILE, JJ.

MEMORANDUM BY BOWES, J.: **FILED JANUARY 06, 2017**

J.H. ("Mother") appeals from the juvenile court's January 25, 2016 orders that discharged S.R. from a prior adjudication of dependency, terminated court supervision, and awarded permanent legal custody ("PLC") to the child's paternal great aunt and uncle, L.R. and L.R ("Aunt and Uncle"). We reverse and remand.[1]

_____

[1] Mother filed with this Court a petition to strike Aunt and Uncle's brief and to quash their status as intervenor based upon their alleged lack of standing. Mother relies upon the well-ensconced precept that foster parents, even kinship foster parents, are not considered parties to dependency proceedings because the agency retains legal custody of the dependent child. However, in treating Aunt and Uncle as typical foster parents in the case at bar, Mother ignores the reality that the trial court specifically named Aunt and Uncle as S.R.'s **legal and physical custodians** as early as October 2013. Hence, they have had standing to participate in the dependency proceedings

*(Footnote Continued Next Page)*

S.R. was born during March 2012. Schuylkill County Child and Youth Services ("CYS") became involved with this family approximately one year later, in response to a report that the family was living in squalor and that C.R. ("Father"), Mother's live-in paramour, was a founded perpetrator of sexual abuse against one of S.R.'s two half-sisters.[2] Upon further investigation, the agency uncovered allegations that Father continued to sleep in the same bed as the victim.

On April 1, 2013, the juvenile court adjudicated S.R. dependent due to a lack of proper parental care and control. While Mother initially retained physical custody of S.R. subject to CYS supervision, the child was removed from the home on June 17, 2013, based upon Mother's failure to rectify the deplorable living conditions or protect the children from Father, who continued to care for the children without supervision. S.R. was placed briefly with maternal grandmother, but after concerns arose regarding inappropriate discipline and the grandmother's alcohol abuse, the juvenile

---

*(Footnote Continued)* ─────────────

since that date. ***See In the Interest of L.C.***, **II**, 900 A.2d 378, 381 (Pa.Super. 2006) ("Due process requires that the child's legal caregiver, be it a parent or other custodian, be granted party status in order to be able to participate and present argument in the dependency proceedings.") Thus, we deny Mother's petition to strike Aunt and Uncles' brief and to quash their intervention as Appellees.

[2] Neither of those children is the subject of this appeal.

court granted temporary legal and physical custody to Aunt and Uncle. CYS has maintained a supervisory role throughout this case.

During the course of the ensuing twenty-seven months, Aunt and Uncle retained their status as temporary legal and physical custodians and Mother demonstrated modest progress toward the goals of the Family Service Plan ("FSP"). Mother obtained housing and consistently attended supervised visitations with S.R. and mental health appointments. Significantly, however, while Mother informed the agency that she terminated her relationship with Father during the summer of 2014, Father subsequently verified that he and Mother maintained a surreptitious relationship as late as November 2015, which she asked him not to reveal. Similarly, although Mother attended her mental health proceedings regularly, she exhibited a history of dishonesty with her treatment providers. During the biannual permanency review hearing that preceded the hearing that is the genesis of this appeal, CYS noted its concern with Mother's lack of progress in her treatment and her capacity to protect S.R. from harm. It recommended that the court endorse Aunt and Uncles' permanent custodianship and vacate the order requiring agency supervision.

CYS did not file a formal petition to discharge S.R. from dependency in this case. Instead, at the outset of the January 25, 2016 permanency review hearing, CYS requested orally that the juvenile court terminate the agency's supervision of the the case, transfer PLC to Aunt and Uncle, and

close the dependency proceedings relating to then three-year-old S.R. The crux of the agency's position is that, in light of Aunt and Uncle's guardianship, S.R. is no longer without parental care and control under § 6302. In support of its request, CYS sought to introduce an affidavit-style report compiled by Christina Alexander, the CYS caseworker assigned to the family, and to present Ms. Alexander for cross-examination.

While neither Mother nor her counsel, Byron Walker, Esquire, appeared at the hearing, paternal Aunt and Uncle, Father and his counsel, the guardian *ad litem*, CYS's attorney were present. Ms. Alexander and two other witnesses attended the hearing. The trial court observed that Attorney Walker had called the courthouse prior to the hearing and requested a continuance due to what he characterized as blizzard conditions that occurred during the preceding two days in neighboring Dauphin County.[3] Although Attorney Walker provided the juvenile court his telephone number, the court declined to contact him. Instead, it noted that the roads in Schuylkill County had been cleared, that Mother lived within walking distance of the courthouse, and that the remaining parties and witness all attended the hearing. The court also considered that CYS, Father, Aunt and

---

[3] Attorney Walker's mailing address is a post office box in Carlisle, Pennsylvania, which is the seat of Cumberland County. Nevertheless, assuming that his practice is located there rather than Dauphin County, Attorney Walker would be required to traverse the affected county to attend the hearing.

Uncle, and the guardian *ad litem* all opposed the continuance. It ultimately denied Attorney Walker's motion for a continuance.

Thereafter, the trial court admitted Ms. Alexander's affidavit without opposition, and following a brief examination of Ms. Alexander regarding who would supervise Mother's visitations with S.R. once the PLC was in effect, the trial court granted CYS's request to terminate court supervision. It entered the above-referenced order that discharged the adjudication of dependency and terminated the trial court's supervision of the case. The concomitant permanency review order entered on the same date formalized the PLC, established the parameters of Mother's supervised visitations with S.R., and outlined her right to stay abreast of all medical and educational decisions relating to S.R.[4] This timely appeal followed.[5]

_____

[4] Pursuant to 42 Pa.C.S. § 6351(a)(2.1)(i), juvenile courts have the authority to enter a disposition order that transfers permanent legal custody of a dependent child to "Any individual resident within or without this Commonwealth, including any relative, who . . . is found . . . to be qualified to receive and care for the child." **See also** 42 Pa.C.S. § 6351(f.1)(3) ("the court shall determine . . . [i]f and when the child will be placed with a legal custodian in cases where the return to the child's parent . . . is not best suited to the safety, protection and physical, mental and moral welfare of the child.").

[5] Mother filed a motion for reconsideration, which the trial court denied on March 1, 2016. The motion did not affect the timeliness of Mother's appeal. **See** Pa.R.C.P. 1930.2(b)(unless reconsideration is granted, motion does not extend appeal period).

- 5 -

Mother's Pa.R.A.P. 1925(a) statement raised three issues, which she reiterated on appeal. We abbreviated Mother's claims for clarity.

a. Whether the [t]rial [c]ourt committed reversible error and an abuse of discretion in the denial of [her] emergency continuance . . . [due to] . . . exigent circumstances[.]

b. Whether the trial court committed reversible error under the Juvenile Act, 24 Pa.C.S. § 6301 *et seq.*, in terminating court supervision and granting legal and physical custody to [Aunt and Uncle.]

c. Whether the trial court committed reversible error under the Juvenile Act, 42 Pa.C.S. § 6301 *et seq.*, in terminating court supervision and granting legal and physical custody to [Aunt and Uncle] where [the court did not identify who would supervise Mother's continued visitation with her daughter.].

Appellant's brief at 4-5.

Pennsylvania Rules of Juvenile Civil Procedure 1122(A), regarding continuances of juvenile proceedings, provides as follows:

A. Generally. In the interests of justice, the court may grant a continuance on its own motion or the motion of any party. On the record, the court shall identify the moving party and state its reasons for granting or denying the continuance.

Pa.R.J.C.P. 1122(A). The comment to Rule 1122 explains that a continuance should not be granted "when [it] could be deleterious to the safety or well-being of a party." Likewise, the comment states, "The interests of justice require the court to look at all the circumstances, effectuating the purposes of the Juvenile Act, 42 Pa.C.S. § 6301, in determining whether a continuance is appropriate." ***Id***.

This Court reviews a trial court's decision to grant or deny a continuance for an abuse of discretion. ***Baysmore v. Brownstein***, 771 A.2d 54, 57 (Pa.Super. 2001). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the results of partiality, prejudice, bias or ill-will." ***Id.*** In addition to the guidance outlined in Rule 1122, relating specifically to juvenile court proceedings, in determining whether a trial court's denial of a motion to continue was tantamount to an abuse of discretion we consider: "(1) whether the opposing party would have been prejudiced by a delay; (2) whether the opposing party agreed to the continuance; (3) the length of the delay requested; and (4) the complexities involved in trying the case." ***Krupa by Krupa v. Williams***, 463 A.2d 429, 434 (Pa.Super. 1983); ***see also Papalia v. Montour Auto Service Company***, 682 A.2d 343, 345 (Pa.Super. 1996).

The trial court proffered the following reasons for denying Mother's motion for a continuance.

> At the time of the Hearing the Court was presented with a Continuance Request by Mother's attorney because of a blizzard that had occurred the weekend prior to the Hearing date. All of the parties at the Hearing opposed the Continuance because the roads were clear and everyone but Mother and her Counsel were present and prepared to proceed. It is noted that the Schuylkill County Courthouse was open for business as usual on the date of the Hearing. The Court Denied the Continuance Request and

proceeded with the Juvenile Review Hearing, as the well-being of a minor child was at issue.

Trial Court Opinion and Order, 3/1/16, at 2.

Mindful of the guidance provided in Rule 1122 and the considerations we enumerated in *Krupa*, *supra and Papalia*, *supra*, we find that the trial court abused its discretion in denying the request without contacting Attorney Williams. First, we observe that, while all of the Appellees opposed the delay, they did not allege any prejudice flowing from the continuance. Appellees' collective reasoning was that they all were able to attend the hearing and that the agency's request to discharge the dependency and transfer PLC to Aunt and Uncle was meritorious. Our review of the certified record reveals that the requested continuance was not "deleterious to [S.R.'s] safety or well-being" insofar as it would not have altered S.R.'s placement with Aunt and Uncle, the FSP, or the child's safety plan. *See* comment to Rule 1122. Additionally, there were no time-sensitive proceedings scheduled, such as the termination of parental rights or a prospective adoption, that would have been derailed by granting the continuance. Indeed, as Appellant accurately observes, the continuance would have maintained the existing state of affairs until the hearing could be rescheduled. This threshold factor militates in Mother's favor.

Furthermore, in contrast to Appellees' shared perspective that Mother did not suffer harm as a result of the court's denial the motion for

continuance, the record establishes that the decision to proceed without Mother or Attorney Walker was, in fact, prejudicial. Collectively, Appellees argue that since Mother retained her parental rights, supervised visitations, and the ability to file a custody action pursuant to the Child Custody Law, she was not harmed by the juvenile court's decision to discharge S.R.'s adjudication of dependency in her absence and award Aunt and Uncle permeant legal custody. This superficial perspective ignores the realities of dependency proceedings.

The order discharging S.R. from dependency inevitably terminated the reunification resources, counseling, and mental health treatment that Mother received through CYS's service providers. In light of the facts that the purposes of the Juvenile Act are a central consideration when reviewing the propriety of a continuance, and that "preserv[ing] the unity of the family whenever possible" is among the primary purposes of the Act, the prejudice to Mother in this case is manifest. **See** 42 Pa.C.S. § 6301(b)(1). Rather than simply discharging the dependency in Mother's absence and transferring PLC to Aunt and Uncle, the court terminated all of the reunification resources that Mother had previously received. Again, these circumstances weigh in favor of Mother.

The next factor we consider relates to the length of the delay associated with the requested continuance. At first glance, this factor does not appear to militate in favor of either granting or denying the continuance.

Attorney Walker, who had the farthest distance to drive to attend the hearing, did not request to postpone the hearing to a specific date. Likewise, the certified record does not reveal the status of the juvenile court calendar, Appellees' availability, or the ability of Ms. Alexander or the remaining witnesses to return at a later date. Nevertheless, notwithstanding the dearth of evidence to consider under this factor, we observe that the trial court could have alleviated this issue altogether had it contacted Attorney Walker as requested and directed him to participate by telephone.

The final factor addresses the complexities involved in the case. Significantly, we conclude that the trial court's decision to proceed with the hearing without Mother or her counsel and dispose of the mater *in absentia* impeded Mother's rights to due process. As this Court stated in **In Interest of Jones**, 429 A.2d 671, 673 (Pa.Super. 1981), "a parent in a dispositional hearing has a constitutional right under the due process clause to confront and cross-examine adverse witnesses." Due process calls for such procedural protections as are required under the particular circumstances of the case. In **In re F.C., III**, 966 A.2d 1131, 1138 (Pa.Super. 2009), we reiterated, "due process is a flexible concept incapable of exact definition, and is concerned with the procedural safeguards demanded by each particular situation in light of the legitimate goals of the applicable law."

**Jones** concerned the in-court presentation of evidence during the dispositional stage of a dependency hearing. In that case, we held that by

denying a mother information concerning the identity of a witness who presented critical testimony against her and by barring her from the witness's examination, the trial court failed to comport with the mandates of due process and denied her "the most important cross-examination tool: knowledge of the witness's identity and with it any bias which could prompt the witness to testify as he did." *Id*. at 676. Accordingly, we vacated the trial court's decision that was adverse to the mother, and we remanded the matter for a new dispositional hearing.

As in *Jones*, *supra*, the juvenile court's disposition in the instant case infringed upon Mother's due process. Preliminarily, we note that Mother was denied formal notice of CYS's request to discharge the dependency. More importantly to our analysis herein, and similar to the constitutional protections at issue in *Jones*, Mother was deprived of her right to confront Ms. Alexander about her report and recommendation, the cornerstone of the juvenile court's decision to grant the agency's request. Significantly, as referenced in our discussion of factor three, the court elected to discharge the dependency proceedings *in absentia* rather than utilize the contact information Attorney Walker provided. The juvenile court could have, but did not, scrutinize counsel's account of the inclement weather or, as previously stated, require him to participate in the hearing by telephone. At a minimum, a telephone conference would have preserved Mother's right to cross-examine Ms. Alexander about her report and recommendation. As it

now stands, the juvenile court encroached upon Mother's due process rights and the interests of justice require that we reverse the orders entered *in absentia* and remand for a new hearing on CYS's request to discharge the adjudication where Mother can exercise her due process right of confrontation.

For all of the foregoing reasons, we find that the juvenile court abused its discretion by declining to grant the continuance under the circumstances of this case.

Orders reversed. Petition denied. Matter remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/6/2017