Alcides Cruz, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued April 7, 1983, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR. and BARBIERI, sitting as a panel of three.

*Blaine J. DeSantis, DeSantis, Huckabee, Weiler & Schmehl,* for petitioner.

*Mary Frances Grabowski,* Assistant Counsel, for respondent.

*Elaine B. Battle,* for amicus curiae, Guardian Ad Litem for E. C.

OPINION BY JUDGE WILLIAMS, JR., February 21, 1984:

This case involves an appeal from the decision of the Pennsylvania Department of Public Welfare (DPW) denying appellant Alcides Cruz's request for expungement of a report of "indicated" child abuse which was filed pursuant to the Child Protective Services Law (Law), 11 P.S. §§2201-2224.[1]

The Law, which was enacted in 1975, establishes a procedure for maintenance of a central state-wide

---

[1] Act of November 26, 1975, P.L. 438, *as amended.*

registry which contains record of all "founded" and "indicated" reports of child abuse. As defined in the Law, a "founded report" is "a report made . . . if there has been any judicial adjudication based on a finding that a child who is the subject of the report has been abused." 11 P.S. §2203. An "indicated report" is "a report made . . . if an investigation by the child protective service determines that substantial evidence of the alleged abuse exists based on (i) available medical evidence, (ii) the child protective service investigation or (iii) an admission of the acts of abuse by the child's parent or person responsible for the child's welfare." Id. "Child abuse" is defined in part as: "serious physical or mental injury which is not explained by the available medical history as being accidental, or sexual abuse or sexual exploitation, or serious physical neglect, of a child under 18 years of age, if the injury, abuse or neglect has been caused by the acts or omissions of the child's parents or by a person responsible for the child's welfare. . . ." Id. Unless expunged by order of the Secretary of the Department of Public Welfare, a report of founded or indicated abuse entered in the central registry remains there until the latter of the child's 18th birthday or five years after the closure of any subsequent report of abuse to the same child, a sibling or offspring of the child, or another child in the same care or custody. 11 P.S. §2214(m).

The instant appeal arose from a report, on October 14, 1980, of child sexual abuse made to the Berks County Children & Youth Services, a county child-protection services agency charged under the Law with responsibility for receiving, investigating, and determining reports of suspected child abuse. An investigation of the report by an agency social worker resulted in a report of indicated child abuse being filed in the central registry in November of 1980. By

letter dated December 3, 1980, the appellant, through his attorney, requested that the child abuse report be expunged. This request was denied on January 22, 1981 by the Director of Protective Services Programs of DPW.

At the request of the appellant, a hearing was held on June 9, 1981 before a hearing officer attached to DPW's Office of Hearings and Appeals. Testimony was taken from the Director of Child Protective Services Programs, the investigating social worker, the alleged abuse victim, who was 14 years old at the time of the hearing, and the victim's younger brother, then age 12. The two minors were questioned *in camera,* with only the attorneys present. The appellant declined to testify in his own behalf. On March 2, 1982, DPW's Office of Hearings and Appeals accepted the recommendation of the hearing officer, and ordered that the request for expungement be denied. This appeal followed.

The appellant asserts a medley of arguments, some based on the United States Constitution, and others premised on the Law itself. Our scope of review requires that we determine whether DPW's adjudication comports with the applicable law, its findings are supported by substantial evidence, and whether the appellant's constitutional rights were violated. *Montgomery County Child Welfare Services v. Hull,* 51 Pa. Commonwealth Ct. 1, 413 A.2d 757 (1980).

The appellant first contends that his constitutional right to due process of law was abridged by virtue of the *in camera* questioning of the abused child and her brother. More specifically, he asserts he had a constitutionally protected interest in his good reputation, and that he was deprived of that interest without due process when he was excluded during his children's testimony, even though his counsel was present and was allowed to cross-examine the children.

In support of this argument, the appellant relies heavily on the Pennsylvania Superior Court's decision in *In Interest of Jones,* 286 Pa. Superior Ct. 574, 429 A.2d 671 (1981). That case held that a mother was denied her due process rights of confrontation and cross-examination in a hearing on the custody of her children when the trial court critically relied on the testimony of a witness *whose identity was withheld from her.* The Superior Court held that, even though the mother's attorney was present during the examination of the witness and vigorously cross-examined him, the mother was "denied the most important cross-examination tool: knowledge of the witness's identity and with it any bias which could prompt the witness to testify as he did." *Id.* at 583, 429 A.2d at 676. However, we are not convinced that this holding is controlling in the instant case. The appellant, unlike the mother in *Jones,* knew the identity of the *in camera* witnesses, who were his own children, and had ample opportunity through his counsel to question the children regarding the factors which motivated their testimony. Thus, the one factor upon which the Superior Court based its determination that the mother in *Jones* was denied due process protections does not apply in the instant case.[2]

Nor do we believe that the Superior Court, in *Jones,* intended to renounce its previous approval of custody proceedings involving *in camera* questioning of juvenile witnesses. In *Gunter v. Gunter,* 240 Pa. Superior Ct. 382, 361 A.2d 307 (1976) and *Sipe v. Shaffer,* 263 Pa. Superior Ct. 27, 396 A.2d 1359 (1979), the court sanctioned such proceedings where there are procedural safeguards to ensure fairness and adequate opportunity for appellate review. *See also Com-*

---

[2] The Superior Court acknowledged that the trial court accorded the mother every possible procedural protection save allowing her to be present at the questioning of the witness.

*monwealth ex rel. Grillo v. Shuster*, 226 Pa. Superior Ct. 229, 312 A.2d 58 (1973). In light of our judgment that being listed in a confidential registry in connection with an incident of "indicated" child abuse is a detriment less severe than being denied the custody of one's children, we do not believe that the instant appellant had a greater right to be present during the questioning of his children than he would have had in a custody proceeding.

Ultimately, we must assess the appellant's constitutional argument on the basis of the calculus prescribed by the United States Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Assuming the existence of a protected interest,[3] *Mathews* prescribed that the amount of process due is to be determined on the basis of three factors:

> [F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 334. A discerning application of these factors to the circumstances of this case leads us to conclude that

[3] DPW argues quite convincingly that the appellant, who claims that his interest in his good reputation is damaged by his being listed in the central registry, has asserted no interest which is protected by the due process clause of the United States Constitution. There is certainly support for DPW's position in *Paul v. Davis*, 424 U.S. 693 (1976), where the United States Supreme Court held that reputation alone is an insufficient interest to trigger due process protections. However, we need not and therefore do not decide this issue, because of our conclusion that, even assuming some protected interest, the appellant was afforded all the process he was due.

the appellant had no right to be present during the questioning of his children.

There is no question that the Commonwealth, as *parens patriae*, has a paramount interest in uncovering child abuse and protecting past and potential victims of such abuse. *New York v. Ferber*,   U.S.   , 50 U.S.L.W. 5077 (1982). Child abuse is an horrendous affront to community expectations for a civilized society. The ever-mounting volume of research on the problem portrays not only the grievous physical and psychological damage wreaked on its young victims, but draws critical links between the seeds of rage and frustration generated by child abuse and the perpetuation of irrational violence in our society at large. *See generally*, V. Fontana & D. Besharov, *The Maltreated Child: The Maltreatment Syndrome in Children: A Medical, Legal and Social Guide* (4th Ed. 1979). In pursuit of its interest in protecting children, it is legitimate and appropriate for government to adopt affirmative steps to encourage the reporting of maltreatment by abuse victims. Assuming observation of applicable safeguards, it is appropriate for state agencies responsible for child welfare to seek to reduce the likelihood and degree of embarassment and intimidation of juvenile witnesses by such reasonable methods as *in camera* questioning. Here, every procedural safeguard was observed short of allowing the appellant to be present when the children testified: the appellant's attorney was present and cross-examined the children; a transcript was made of the children's testimony; and the appellant knew the identity of the witnesses and had an opportunity to advise his attorney of any factors which he thought might cause them to testify out of bias, revenge or malice.

The appellant, on the other hand, has failed to state how his reputational interest was placed at sig-

nificantly greater risk of erroneous deprivation by the procedure which was employed. Nor has he explained what value in terms of the integrity of the process or the likelihood of a fair outcome would have resulted from his presence during the questioning.

Due process analysis does not respond to shouting shibboleths. As *Mathews* demonstrates, the ever-growing complexity of the dynamics between public and private interests requires a careful weighing of the importance of the respective interests involved and of the costs of employing alternative procedures. In light of the procedural safeguards which were accorded the appellant, and the marginal benefit which would have been derived from his presence as compared to the possible detriment to the children, we conclude that he had no right to be present during his children's testimony.

The appellant next contends that his right to due process was breached by DPW's failure to identify the person who made the initial report of suspected abuse to the Berks County Children & Youth Services. The appellant also attacks the constitutionality of the Law itself on the ground that it does not afford the subject of a report of suspected child abuse the unqualified right to learn the identity of the person who made the report. Despite the appellant's invitation to wade into these constitutional waters, we decline to do so because the appellant has failed to properly preserve the issues he advances. There is no indication that the appellant ever requested from DPW the identity of the person who originally made the report. Having never sought that information, he cannot complain now that his constitutional rights were violated. *See Asten Hill Manufacturing Co. v. Workmen's Compensation Appeal Board,* 56 Pa. Commonwealth Ct. 20, 423 A.2d 1135 (1981).

In requiring the appellant to make a proper request for the identity of the reporter, we are not insisting upon performance of a futile act. The Law specifically provides an exception to the prohibition on disclosure of the identity of persons who report an incident of suspected child abuse if "the secretary finds that such release will not be detrimental to the safety of such person." 11 P.S. §2215(c). Because the appellant failed to exercise the administrative avenue which was available to him, we have no choice but to dismiss his constitutional arguments. See *Easton Hospital v. Department of Public Welfare,* 76 Pa. Commonwealth Ct. 39, 463 A.2d 94 (1983).

The appellant also argues that DPW should have expunged the record because the report to the child protective agency was made at least two years after the last alleged incident of sexual abuse. He contends that his daughter delayed too long in reporting the alleged abuse, and that the record fails to establish that the person who made the report to the county child protective agency did so within the time required by the statute.[4] He fashions this argument on the basis of (1) the purpose section of the statute which states that the Law was enacted to respond to the "urgent" need of abused children for protective services to prevent their further injury and impairment; and (2) the provision of the statute which requires persons mandated to report incidents of suspected child abuse to file an oral report immediately and a written report within 48 hours after the oral report. This argument has no merit. We find nowhere in the statute any suggestion that the legislature intended to create a statute of limitations for reports of child abuse. Furthermore, the appellant cannot rely on any dereliction by

---

[4] There is nothing in the record which suggests any deviation from the reporting procedures prescribed by the Law.

the reporter of the alleged abuse as a basis of expunging the report. The time limits prescribed by the statute were obviously intended for the protection of the child, not to shield the alleged abuser.

The circumstances of this case graphically demonstrate how the statutory construction which the appellant urges would be contrary to the legislative intent to protect abused children from further abuse. According to the record testimony, it was because of the prospect of the appellant being granted visitation privileges with his children, and the fear of resumption of the appellant's sexual demands, that led the appellant's daughter to confide, first to her mother and then to welfare authorities, the circumstances which were the basis for the report of suspected abuse. If the appellant's argument were to prevail, welfare authorities would be helpless to provide protective services to this child, despite her reasonable fear of further abuse. This could hardly have been the legislature's intent, and we decline to adopt a result in this case which would contravene what we understand to be the legislative objective.

Equally improbable is the appellant's argument that the provisions of the Law require that DPW subject the appellant's daughter to a physical examination, and both children to psychological evaluations. The appellant contends that in the absence of these examinations, the report of suspected abuse was not properly verified, and it was therefore error for DPW to decline to expunge the record. Nothing in the statute itself specifically states that a report of child abuse cannot be determined ''indicated'' without expert medical and psychological evidence.[5] However,

---

[5] The Law designates "available medical evidence" as one of three alternative bases for an "indicated report" of child abuse. 11 P.S. §2203.

the appellant premises his argument upon an interpretive memo prepared by DPW for dissemination to regional and county child welfare officials and supervisors. The DPW memorandum, dated April 2, 1979, purported to answer and clarify some of the most frequently raised questions concerning the Law. The appellant's position appears to be that, since DPW is the administrative agency charged with implementation of the statute, its interpretations of the requirements of the statute are entitled to considerable deference.

While we do not argue with the deference which the appellant would accord DPW's interpretation of the Law, we disagree with the appellant's construction of DPW's interpretive memorandum. The appellant relies on the following portion of the memorandum for his argument that the Law required a medical examination of his daughter:

Generally a medical examination should be secured in reports of suspected sexual abuse. The medical examination and the CPS [Child Protective Service] investigation then form the basis for the CPS decision.

The plain meaning of this language suggests to us no inflexible requirement that a suspected abuse victim undergo a medical examination. Furthermore, the following language from the memorandum clearly indicates that DPW contemplated that there would be times when a finding of "indicated" sexual abuse would not be based on medical evidence:

Since sexual abuse frequently does not include a physical injury or condition (e.g. indecent assault), medical evidence is not always "available." In these cases the C.P.S. decision may be based on information from their investigation alone. To substantiate a finding of "indicated"

sexual abuse based solely on the C.P.S. investigation, the information must be substantial, credible and fully recorded.

Finally, at the hearing in this case the state-wide Director of Child Protective Service Programs testified that his department does not require medical examinations to substantiate reports of child sexual abuse in situations where there is likely to be no physical evidence, or where any physical evidence of abuse would have dissipated through passage of time.

The absence of any mandatory language in the statute combined with DPW's administrative policy, as reflected in the interpretive memo and in the testimony of the Director of Child Protective Services Programs undermines any argument that medical evidence is mandatory in all cases. Furthermore, the lapse of at least two years between the last alleged incident of abuse and the report readily justifies the agency's decision not to subject the suspected abuse victim to a medical examination.

Nor do we find any basis in the statute or in the administrative regulations for the appellant's contention that the Law required that the juvenile witnesses be given psychiatric or psychological evaluations. The only authority which the appellant cites in support of his argument is a section of a DPW interpretive memorandum which states:

Although the statements of the alleged victim and/or perpetrator are significant, it is suggested that a psychiatrist or psychologist provide consultation or evaluation to further substantiate the C.P.S. finding in these cases.

We do not think it could be clearer that psychiatric or psychological consultation is merely suggested, not required, by the departmental guidelines. The child protective agency made what appears on its face to be

a rational judgment that psychiatric or psychological consultation was not necessary in this case.[6]

As a final matter, the appellant contends that DPW's decision is not supported by substantial evidence. We strongly disagree. The alleged abuse victim and her brother, an eyewitness, gave graphic testimony of repeated incidents of sexual intercourse between the abuse victim and her father, the appellant. Their testimony was not materially shaken on cross-examination by the appellant's counsel. Nor did the appellant present evidence to either refute the children's testimony or suggest reasons why their testimony should not be believed. Upon a careful review of the record in this case, we are firmly convinced that DPW's decision is supported by substantial evidence.

Accordingly, the decision of the Department of Public Welfare is affirmed.

### ORDER

AND Now, this 21st day of February, 1984, the decision of the Pennsylvania Department of Public Welfare, denying the request for expungement of a report of "indicated" child abuse, is hereby affirmed.

---

[6] The agency social worker testified that she did not arrange a psychiatric or psychological consultation because the alleged victim seemed to be functioning well in her everyday activities.