### ORDER

## In re Tina K.

*Richard J. Blasetti,* guardian ad litem

*Stephen P. Imms Jr.,* for Office of Children and Youth.

*Wendy J. Goldenberg,* for Jack K.

TRESSLER, *J.,* November 30, 1988 — On November 25, 1985, legal and physical custody of Tina K., eight and one-half years of age, was *voluntarily* transferred for a period of 30 days by her parents to the Office of Children and Youth Services of Montgomery County. The agency immediately obtained residential placement for the child at Silver Springs-Martin Luther School. Just prior to the conclusion of the permitted period of placement, OCY filed a dependency petition with the Juvenile Court alleging Tina K. was an ungovernable child because her parents were "unsuccessful at controlling (her) wild and hyper behavior."

Richard Blasetti, Esq., having been appointed guardian ad litem, a hearing was held on December 18, 1985, before Juvenile Court Master Kent Albright, Esq., and the resulting master's report filed January 3, 1986. Findings of fact and recommendations contained in this report affirmed both the child's ungovernability and her need for continued residential placement at Silver Springs. Exceptions were not filed and the master's recommendations became the order of the court.

On May 20, 1986, pursuant to 55 Pa. Code §3130.71[1] a placement review was conducted by

---

1. 55 Pa. Code §3130.71 requires OCY to review the status of any child in placement no less frequently than once every six months.

"The child's first review shall occur no later than six months from the date of placement. Subsequent periodic review — those following the first review — shall be held no later than six months from the date of the previous periodic review."

Master Albright and his findings of fact and recommendations affirmed by the Honorable William Nicholas on July 18, 1986. The child's continued placement was necessitated by an unaddressed alcohol dependency problem experienced by Mrs. K., parental inability to provide an emotionally secure environment, and the child's own need for the therapy and structure offered by Silver Springs. At no time were allegations of sexual abuse, or inappropriate sexual conduct by the child mentioned.

From November 25, 1985, until August 1986, the physical custody of Tina K. was within the exclusive control of Silver Springs. Her parents enjoyed telephone contacts and approximately 12 home visits with their daughter during this period. On August 20, 1986, nine months after the child had been committed to Silver Springs, OCY informed the court that Tina K. had been exhibiting inappropriate sexual conduct during the previous months of April and May.[2] At a subsequent meeting with a psychotherapist, Tina K. explained her conduct by accusing her father (Jack K.) of sexually assaulting her. As a result of the child's statements, OCY requested the court terminate all telephone contacts between the child and her parents and limit parental visitation to one hour every two weeks and then only under strict supervision by OCY.[3] This request

---

2. It is significant that while most of this alleged conduct had occurred *prior* to the placement review held May 20, 1986, it was never mentioned during that proceeding.

3. The last two sentences of the written information submitted by OCY to the court explained the basis for these requested modifications:

"If Mr. [K] admits to the sexual abuse and can accept treatment we will re-evaluate the phone contact and visitation schedule. Due to Mrs. [K's] inability to trust her child's statements and totally believe her daughter regarding the abuse, I am requesting the same restrictions for her also."

was granted, however, no petition alleging sexual abuse was immediately forthcoming thereafter, as the court had expected.

On November 24, 1986, approximately three months later, at a hearing originally scheduled as a placement review, OCY filed in open court a juvenile petition accusing Jack K. of sexually abusing his daughter and requesting her adjudication as a dependent/abused child. Jack K., having been given notice of the agency's intention, agreed that an adjudication hearing could be conducted on this date. Accordingly, the hearing was held.

At the hearing, Sharon Fyffe, Christina Walton, and Judy Nessen, all social workers supervising Tina K. at Silver Springs, and Ralph Battinieri, a psychologist specializing in child abuse, retained by OCY, testified. All spoke of conversations with Tina K. in which she stated that her father had sexually assaulted her. Tina K. never testified herself, nor was any explanation offered by OCY to explain the reasons for her absence from the courtroom. Counsel for Jack K. objected to this testimony as hearsay and also raised the question of the child's "unavailability" and the constitutionality of the statute.

The hearsay statements of Tina K. given to the aforementioned persons constituted the sole evidence against the father who emphatically denied the allegations. Moreover, Mrs. K., who according to OCY's own affidavit disbelieved her daughter, was not present because of her death the previous month.

The hearsay statements of Tina K. were permitted into evidence pursuant to 42 Pa.C.S. §5986, which provides:

"A statement made by a child describing acts and attempted acts of indecent contact . . . with or on the child by another, not otherwise admissible by stat-

ute or court ruling, is admissible in evidence in a dependency proceeding . . . involving that child . . . if a court finds that the time, content and circumstances of this statement provide sufficient indicia of reliability."

During the hearing the court conducted a simultaneous dual inquiry. First, it decided whether the surrounding circumstances and alleged statements of Tina K. possessed "sufficient indicia of reliability" to bring them within the legislative hearsay exception cited above. The court decided this issue affirmatively for reasons cited on pages 143 through 145 of the notes of testimony.

Having found these statements admissible under 42 Pa.C.S. §5986, the court then considered them against the denials of Jack K. The court held that OCY had met its burden of proving this sexual abuse against the father by clear and convincing evidence, and Tina K. was adjudicated a dependent/abused child.

The record demonstrates that one troubling legal issue remained unresolved at the conclusion of the hearing and the court permitted all counsel to reserve this issue for future argument. It revolved around the fact that OCY had failed to produce Tina K. at the hearing and had offered no testimony to explain her absence. To the contrary, a review of the record indicates Tina K. was perfectly capable of testifying. OCY's own witnesses stated the child had recovered from her initial upset, was no longer withdrawn, had developed good friendships, and has ceased her sexually inappropriate conduct. Even their psychotherapist never stated that she would have been traumatized by a court appearance. No scintilla of evidence was introduced to suggest Tina K. was legally "unavailable." OCY

simply failed, or refused, to produce her at the hearing.

Realizing that the due process rights of the father had probably been jeopardized, the court agreed to review this issue and scheduled subsequent argument. Prior to the scheduling of this argument, counsel for Jack K. appealed to the Superior Court without filing exceptions to the court's order or framing this issue in any manner. Since all parties still wished to brief and argue this issue before the lower court, it was agreed that the appeal be withdrawn, exceptions filed with the hearing judge and argument provided.

On June 1, 1986, "exceptions to the decision of the Honorable Paul W. Tressler" were filed on behalf of Jack K., citing 24 alleged errors. After argument on June 18, 1987, the court reversed its order of November 29, 1986, which had declared Tina K. to have been dependent/abused and reinstated her previous adjudication as a dependent/ungovernable child. Custody continued to remain with OCY.

Reversal of the November 29, 1986 adjudication order was based solely upon a single issue; no other issues were addressed. Specifically the court found the failure by OCY to either produce Tina K. at the hearing, or, in the alternative, to establish her "unavailability" constituted a violation of the due process rights afforded her father, Jack K. He had been denied the opportunity to confront and cross-examine his accuser, and the court had been denied the opportunity to access the victim's demeanor — all without reason.

On July 4, 1987, OCY appealed to the Superior Court alleging two errors committed by the lower court, one of which was withdrawn by letter dated August 10, 1987. The sole remaining issue for

appellate review was whether the failure to produce Tina K. at the hearing, or in the alternative establish her "unavailability," violated the due process rights of the alleged perpetrator. The language of 42 Pa. C.S., §5986 contains no such requirements.

The record clearly supports the lower court's finding that the statements purportedly made by Tina K. were admissible under 42 Pa.C.S. §5986, because an "indicia of reliability" existed. Notwithstanding the statute, does the due process clause impose an additional condition upon such testimony before it can be introduced into evidence, i.e., "unavailability"?

In criminal prosecutions the U.S. Supreme Court has held that a declarant must either testify in court or be "unavailable" to the commonwealth if his statement, which is otherwise admissible as an exception to the hearsay rule, is to be introduced at trial. *Ohio v. Roberts,* 448 U.S. 56, 65 L.Ed.2d 597, 100 S.Ct. 2531 (1980); *California v. Green,* 339 U.S. 149, 26 L.Ed.2d 489, 90 S.Ct. 1930 (1970). The effort required of the prosecution to produce such a witness is a question of reasonableness. Child abuse proceedings in juvenile court, however, have been held to be civil in nature rather than criminal, and the Sixth Amendment is therefore inapplicable. *In re A.M. and P.M.,* 365 Pa. Super. 516, 530 A.2d 430 (1987); *In re M.W.,* 374 N. W. 2d 889 (S.D. 1985).

This is not to say, however, that a person accused of child abuse in a dependency proceeding forfeits his right to confront and cross-examine witnesses. Rather, it means that such a right emanates from principles of due process rather than from the Sixth Amendment. Due process guarantees a minimum standard of fairness inherent in the truth-finding process even in civil proceedings. To determine whether due process has been violated, Pennsylva-

nia has adopted the federal rationale contained in *Matthews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed 2d 18 (1976), which balance three competing circumstances. These factors include:

"(1) The private interest affected by official action;

"(2) Risk of deprivation of this interest through adopted procedures and the value of additional or substitute procedural safeguards; and

"(3) The governmental interest, and the fiscal, and administrative burden the additional or substitute procedural requirements would necessitate." *Cruz v. Pa. Department of Welfare,* 80 Pa. Commw. 360, 365, 472 A.2d 725, 728 (1984).

The competing interests in the instant matter are obvious. Society as parens patriae has a recognized interest in protecting its children from sexual abuse and reducing the intimidation of child witnesses in court. The opposing interest is governmental reluctance to invade the sanctity of the home and interfere with parental rights. "It is a serious matter for the long arm of the state to reach into a home and snatch a child from its mother." *In re Rinker,* 180 Pa. Super. 143, 148, 117 A.2d 780, 783 (1955).

While one must agree that the stringent Sixth Amendment standards associated with criminal cases are not applicable to this proceeding, it is equally obvious that substantial due process rights are guaranteed.[4] The competing interests in dependency/abuse cases are significantly greater than those associated with most other civil proceedings. Indeed this court believes that many parents, if

---

4. "The procedure employed in *Cruz,* viz., seems to us to strike a rational balance between the competing interests. We adopt, then, those safeguards as the minimum necessary to satisfy due process concerns". *In the Interest of Leslie H.,* 329 Pa. Super. 453, 457-8, 478 A.2d 876, 878 (1984).

faced with the unattractive alternatives of imprisonment, or loss of their children, would unhesitatingly choose imprisonment as less onerous. The Pennsylvania legislature confirmed this fact when it adopted "clear and convincing evidence" as the standard of proof in child abuse cases, rather than the "preponderance of the evidence" standard applicable to other civil proceedings.

Pennsylvania courts have held that in dependency proceedings, due process guarantees to parents the right to be represented by counsel, cross-examine witnesses, preserve testimony via a record, and assure that the fact-finder will have an opportunity to observe the demeanor of witnesses. *In the Interest of Leslie H.*, 329 Pa. Super. 453, 478 A.2d 876 (1984); *Interest of Jones*, 286 Pa. Super. 574, 429 A.2d 671 (1981). OCY insisted the need to protect child witnesses in alleged sexual abuse situations is so compelling that the aforementioned parental rights must be sacrificed. The agency cites 42 Pa.C.S. §5986 as legislative support for this position.

If the agency's position is correct, once the court determined the "time, content and circumstances of this statement provided sufficient indicia of responsibility," hearsay statements issued by the child would be admissible under any circumstance. Accordingly the agency could intentionally withhold abused children from testifying in court, even though these children were perfectly competent to testify, free of trauma and capable of taking the stand. This court refuses to treat the due process rights of parents accused of child abuse in such a cavalier manner.

The issue in the instant matter is not whether the due process rights of parents accused of sexual abuse should be ignored or lessened when a child is

so traumatized by the courtroom that she *is inca-pable* of giving testimony.[5] Rather the issue is whether a parent's due process rights can be totally ignored in a dependency proceeding when the child is not traumatized and *is capable* of testifying.

Three facts are clearly supported by the record in the instant matter. First, sufficient "indicia of reliability" existed to bring the hearsay statements of Tina K. within the legislative hearsay exception established by 42 Pa.C.S. §5986. Second, none of the statements of Tina K. to third parties fall within the parameters of traditional common-law exceptions to the hearsay rule. Third, no testimony was ever presented to demonstrate Tina K. was incapable of testifying in this court proceeding.

The inherent danger of hearsay statements are precisely those concerns which are protected by a party's due process rights. Historically hearsay evidence was excluded from trial because the declarant was not subjected to the solemnity of the oath, neither the adversary nor the trier-of-fact were able to observe the demeanor of the declarant, and the adverse party lacked the opportunity to cross-examine the declarant. All of these affect the ability to evaluate a witness's credibility and are inherent due process concerns.

Hearsay exceptions, however, have developed over the centuries which permit out-of-court statements to be introduced into evidence under certain circumstances. All such exceptions possess an inherent reliability which guarantees their accuracy thereby permitting their introduction into court without being subjected to some of the accepted truth-testing procedures. Hearsay statements, how-

---

5. See *Commonwealth v. Ludwig,* 366 Pa. Super. 361, 531 A.2d 459 (1987) for an excellent discussion of this issue in a criminal proceeding.

ever, do not all possess the same quality of reliability. In some instances the circumstances under which they are offered suggest greater reliability than others and cause the out-of-court statement to assume a life of its own. Much of this value exists because these statements are made in a context very different from trial and thereafter are usually irreplacable at trial as substantive evidence.

A second form of hearsay has some inherent reliability but no separate contextual importance apart from the trial; it is only a weaker substitution for live testimony. When this type of situation arises, the out-of-court declarant should appear in court and be subject to cross-examination unless he is not available to so appear. In other words, live testimony is preferred over hearsay testimony, but hearsay, if of the quality specified, is preferred over the complete loss of declarant's statement.[6]

Examination of the Federal Rules of Evidence demonstrates this distinction. Federal Rule 803[7] enumerates hearsay exceptions which are admissible into evidence regardless of whether the declarant is available for trial. Among those cited are exceptions for excited utterances, present sense impressions, then-existing mental, emotional or physical conditions, statements for the purpose of medical treatment, and others of similar nature. All are made under circumstances which assume a life of their own which differs from the trial process. For example, an excited utterance is deemed reliable because the declarant is speaking *reflexively* while under the influence of the startling event. Since one cannot produce the same event at trial, the declarant's *reflective* statement at that proceeding does

6. Myers, *Hearsay and the Child Abuse Victim,* 38 Baylor L. Rev. 775 (1986).

7. Fed. R. Evid. 803.

not have the same high assurance of credibility as the original statement. Accordingly, the witness's "unavailability" does not affect the reliability of this type of original statement.

On the other hand Federal Rule 804(b)[8] contains exceptions of a different nature. They include former testimony, statements under belief of impending death, statement against interest, statement of personal or family history, and other similar exceptions. While all possess an indicia of reliability, here the former testimony is merely a weaker version of the live testimony which could be presented at trial. As a result, the rules require an out-of-court declarant be present to testify unless he is "unavailable" as defined by Federal Rule 804(e).

The circumstances surrounding the statements of Tina K. are more analogous to those exceptions noted in Federal Rule 804(b) than those contained in Federal Rule 803. There was never a suggestion that these statements constituted excited utterances, or conformed to any other recognized common-law exception; the basis of their admission was completely statutory. Nor did the setting in which the statements were given assure reliability on a par with those contained in Federal Rule 803. To the contrary, judicial reliability was founded upon the child's language and sexual conduct, and her emotional upset.

The record reflects that the child's emotional upset could have been attributable to the serious prolonged illness of her now-deceased mother, and her atrocious language and advanced sexual conduct a reflection of her close relationship with a peer at Silver Springs who had been sexually abused. Further her anger toward her father over her initial placement with OCY was an established fact. Cross-

---

8. Fed. R. Evid. 804(b).

examination of the child and opportunity for the court to have observed her demeanor under oath were essential to a fair determination of the issues under the facts of this case. Tina K. should have testified in this proceeding, and if she was unable to testify because of trauma, her "unavailability" should have been judicially determined.

Another argument, implicit in the conduct of OCY in this case, is that 42 Pa.C.S. §5986, creates a *presumption* of child trauma in those situations where an indicia of reliability supports the child's statement, and therefore the child need never testify. A similar argument has been rejected recently by the U.S. Supreme Court in *Coy v. Iowa*, 108 S. Ct. 2798 (1988). Although a criminal case, involving a defendant's Sixth Amendment right, the issue and analogy are strikingly similar.

In that case the U.S. Supreme Court held unconstitutional an Iowa statute that created a presumption of trauma in sexually abused children. Mr. Justice Scalia, writing for the majority, noted, "Since there have been no individualized findings that these particular witnesses need special protection, the judgment here could not be sustained by any conceivable exception." *Coy v. Iowa, supra,* at 2803. In the instant matter, the court not only failed to make such findings, but unlike the victims in *Coy v. Iowa, supra,* she never appeared in court at all.

Finally, the language of the statute in question leaves much to be desired. First, it creates a general standard to be employed by the courts when determining whether a child's statement concerning sexual abuse has sufficient "indicia of reliability" to qualify as a hearsay exception. The court is ordered merely to consider the "time, content and circumstances" of the statement. No direction is given as to how these factors are to be applied or their relative

priority, leaving judges to employ and interpret these words and their circumstances differently.

While this is not fatal to the statute, it gives this court some concern that there is no assurance of consistent judicial interpretation in future cases absent appellate review. Nor are these standards as clear and unequivocal as those associated with recognized common-law hearsay exceptions. In light of this, the due process rights of a parent should not be taken lightly. At a minimum the alleged child victim should either appear and testify in court, or be declared "unavailable" by the court prior to the introduction of the hearsay statement.

It is interesting to note that the Pennsylvania legislature had considered the issue of witness "unavailability" in another piece of legislation. Senate Bill no. 1361 of 1984, subsequently vetoed by Governor Thornburgh, created a similar hearsay exception in criminal cases. It read as follows:

"(A) *General Rule* — An out-of-court statement made by a child victim or witness describing indecent contact . . . not otherwise admissible by statute or rule of evidence is admissible in evidence in any criminal proceeding if:

"(1) The court finds the evidence is necessary, and that the time, content and circumstances of the statement provides sufficient indicia of reliability.

"(2) The child either:

"(i) testifies at the proceeding; or

"(ii) is unavailable as a witness if there is corroborative evidence of the act."[9]

This court does not suggest that due process considerations necessitate corroborative evidence in civil proceedings as required in the criminal area under the aforementioned Senate Bill. The court

---

9. *Commonwealth v. Haber,* 351 Pa. Super. 79, 505 A.2d 273 (1986)

does believe, however, that a minimum require-
ment of "unavailability" is necessary to guarantee
fundamental fairness. [10]

Assuming arguendo the validity of the court's
analysis, *Cruz v. Commonwealth of Pa., Dept. of
Welfare, supra,* requires us to consider a final factor
when determining whether the due process rights
of a person are violated. Is the fiscal or administra-
tive burden imposed upon OCY so onerous as to
render the remedy inappropriate? The proposed
remedy for admitting a child's hearsay statement
into evidence is to either produce the child-victim at
the hearing, or to establish her "unavailability" to
the court's satisfaction. In considering the impor-
tance of the rights being protected, it is difficult to
imagine a less onerous or non-burdensome require-
ment.

Procedurally, assuming due notice, the court
could conduct an in camera hearing with the child
on the issue of "unavailability" immediately prior to
the hearing on the merits. At this proceeding the
child would be examined by the court, and the
attorneys in chambers, with appropriate cross-
examination being made available to defense coun-
sel; the accused would not be present at this time
but would enjoy private communication with his
counsel. Any additional witnesses testifying at the
pretrial hearing would be subjected to the same
truth-testing procedures inherent in other judicial
proceedings.

---

10. The lower court has held the accused's due process
rights were violated in this matter but never addressed the
issue of whether the statute was constitutional. However, if
one assumes the legislative failure to include "unavailability"
in the instant act was intentional because of the prior lan-
guage of Senate Bill no. 1361 of 1984, then 42 Pa.C.S. §5986
is unconstitutional to that extent.

Nor would a factual determination of whether a child witness was "unavailable" be difficult to undertake. Pennsylvania statutory and case law has established well-defined examples of witness "unavailability" for the purpose of admitting prior statements into evidence.[11] In addition the inherent weakened position of child abuse victims in court requires an expansion of this term to include several instances common to such witnesses.

A model statute has been proposed by the Young Lawyers Section of the American Bar Association concerning this issue. Among the grounds listed as establishing "unavailability" are the following:

"(i) the child's death;

"(ii) the child's absence from the jurisdiction;

"(iii) the child's total failure of memory;

"(iv) the child's persistent refusal to testify despite judicial requests to do so;

"(v) the child's physical or mental disability;

"(vi) the existence of a privilege involving the child;

"(vii) the child's incompetency, including the child's inability to communicate about the offense because of fear or a similar reason;

"(viii) substantial likelihood that the child would suffer severe emotional trauma from testifying at the proceedings, or by means of videotaped deposition or closed-circuit television."[12]

---

11. See 42 Pa.C.S. §§5917 and 5934 and the cases decided thereunder.

12. Eatman, R. Buckley, *J., Protecting Child Victim/ Witnesses,* National Legal Resource Center for Child Advocacy and Protection, Washington, D.C. (1986) at 5.

See also Whitcomb, Debra, *Prosecution of Child Sexual Abuse; Innovation in Practice,* Nat'l. Inst. of Justice/Research Brief (November 1985) for a list of those states which have adopted legislation defining "unavailability."

All of the aforementioned grounds except (viii) can be established without benefit of expert testimony and therefore impose no additional financial burden upon OCY. Proving that a child is likely to be severely traumatized by a courtroom appearance does require expert psychiatric testimony, however, even here the expense is minimized because such experts are usually involved with the abused child prior to the hearing anyway. The only additional expense would be generated by court attendance. Fiscal and administrative considerations are not sufficiently compelling to override an accused's due process rights.

In conclusion, fundamental fairness requires that a parent accused of sexually abusing his child be given an opportunity to confront and cross-examine that child in dependency proceedings. These rights, however, will be limited to permit a child's hearsay statements into evidence under two circumstances. First, if the child testifies at the hearing and is subject to cross-examination, a prior hearsay statement may come in as both corroborative and/or substantive evidence. On the other hand, if a child does not testify at the hearing, the hearsay statement may still be introduced, but only if the court finds that the reason the child failed to testify was because he or she was "unavailable."

In the instant matter the court never had the opportunity to determine whether Tina K. was "unavailable" to testify; her appearance had been arbitrarily withheld by OCY. Thus the court was required to reverse the decision rendered in this dependency proceeding.

Based on the above considerations, the adjudication order of the undersigned dated November 29, 1986 is hereby reversed.