611 A.2d 1339

**CUMBERLAND COUNTY CHILDREN & YOUTH SERVICES, Petitioner,**

**v.**

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 6, 1991.

Decided June 12, 1992.

Petition for Allowance of Appeal
Denied Jan. 6, 1993.

Ruby D. Weeks, for petitioner.

No appearance for respondent.

Robert E. Rains, Supervising Atty., and Marian M. Gause, Certified Legal Intern, for intervenor, M.A.A.

Julie F. McKain, amicus curiae, Guardian Ad Litem.

Before CRAIG, President Judge, PALLADINO, J., and BARRY, Senior Judge.

CRAIG, President Judge.

The Cumberland County Children and Youth Services (CYS) appeals the June 18, 1991 order of the Office of Hearings and Appeals in the Department of Public Welfare (DPW), which adopted the recommendations of the DPW hearing officer, sustaining the appeal of M.A.A., a father, to

expunge an indicated report of child abuse from the statewide central register,[1] which named him as the perpetrator of sexual abuse against his daughter M.A. Because DPW committed an error of law when it ruled that CYS had not filed its report with the central register in a timely fashion, and because DPW has not yet addressed the substantive issues in this appeal, we must reverse and remand.

The chronology of events in this case is as follows. On April 27, 1988, B.A., the child's natural mother, with whom the child resides, brought M.A., then four years old, to the CYS office because of possible sexual abuse. At that initial interview, B.A. told the CYS caseworker that M.A. had been masturbating and had told another child that "Daddy says it feels good." When the caseworker interviewed the child, M.A. said that she and her father slept together when she visited him, but she denied that her father touched her "kitty," the word she used to refer to her vaginal area. M.A. refused to discuss her father any further with the caseworker at that time. M.A.'s natural parents were divorced in 1986, after which M.A. visited her father regularly on weekends while she lived with her mother during the week.

Because the CYS caseworker was concerned about M.A.'s behavior, she referred M.A. for counseling at the Rape Crisis Center and for a medical examination. She did not report this incident to DPW's central register (ChildLine) as "suspected child abuse" at that time because both the mother B.A., who is somewhat developmentally disabled, and the child M.A., who is

1. Section 6303 of the Child Protective Services Law (Law) defines an "indicated report" as a report made pursuant to the Law where:
   [A]n investigation by the child protective service determines that substantial evidence of the alleged abuse exists based on any of the following:
   (1) Available medical evidence.
   (2) The child protective service investigation.
   (3) An admission of the acts of abuse by the parent of the child or person responsible for the welfare of the child.
   23 Pa.C.S. § 6303.
   The Child Protective Services Law, formerly Act of November 26, 1975, P.L. 438, *as amended*, 11 P.S. §§ 2201–2224, has now been consolidated at 23 Pa.C.S. §§ 6301–6384. We will refer to the Law using its current codification.

very young, made only vague allegations of abuse, and M.A. would not name the perpetrator of the abuse. The caseworker was following DPW policy which requires that the perpetrator of child abuse be known before ChildLine will accept and register a report of suspected abuse; DPW states that policy in *CYF Bulletin,* Number 99–85–29, dated December 2, 1985 and *DPW Social Services Memorandum,* # 49–79, dated December 14, 1979.

M.A.'s medical examination revealed no physical signs of abuse, and it was not until June 7, 1988 that M.A. told her rape crisis counselor that her father had touched her vaginal area, and that this was a "secret" that she was reluctant to talk about. The counselor showed M.A. photographs of her father M.A.A. and of her mother's paramour, R.B., and asked the child if either of the men was involved in her secret. M.A. responded by throwing M.A.A.'s picture, and then hiding it in a book.

The next day, June 8, 1988, when the counselor informed CYS of M.A.'s allegations, the agency made a complaint of suspected child abuse to ChildLine, naming M.A.A. as the perpetrator. In June and July of 1988, M.A. was evaluated by Dr. Dorris Tinker, a clinical psychologist, professor of pediatrics, and expert in child sexual abuse, as well as continuing to see her rape crisis counselor. Dr. Tinker evaluated M.A. using various techniques, including anatomically correct dolls, and determined that M.A. had probably been sexually abused, but the doctor did not have enough evidence from her few sessions with the child to identify the perpetrator.

The father M.A.A. also received an evaluation during this time from an adult counseling center and submitted it to CYS, where he revealed that he sometimes slept in the same bed with his child when she visited, but he denied ever sexually abusing her. As a result of these allegations, M.A. stopped spending weekends with her father, and instead they visited at the CYS office, supervised by CYS caseworkers. On July 21, 1988, at one of these supervised visits, the CYS supervisor and caseworker observed that M.A.A. got an erection at two different times while playing with his daughter. When the

caseworker confronted him with this observation at a later date, M.A.A. denied that he had an erection at that visit, explaining that he carried an inhaler in his front pocket to treat asthma.

On July 26, 1988, CYS filed an indicated report with Child-Line, reporting that the "child states and shows with anatomically correct dolls that father touches her vaginal area while sleeping with her." CYS based its determination on M.A.'s evaluation by her rape crisis counselor and Dr. Tinker, on M.A.A.'s evaluation by his own counselor, and on CYS' observations of supervised visits between the father and daughter. M.A.A. appealed this finding to DPW and asked to have the report expunged, arguing that CYS lacked substantial evidence that he had ever sexually abused his daughter, and that the report was therefore inaccurate.[2] The secretary denied M.A.A.'s request for expungement, M.A.A. requested a hearing pursuant to section 6341(c) of the Law, and hearings were held in March and June of 1989.

M.A.A. argued that the indicated report naming him as the perpetrator of abuse should be expunged because CYS lacked substantial evidence that M.A. was sexually abused, lacked substantial evidence that M.A.A. was the abuser, and that DPW was maintaining its records improperly. M.A.A. also argued that his report should be expunged because CYS failed to determine, within the time allowed by the Law, that this report of sexual abuse was indicated.

The Law provides the following guidelines for child abuse investigations. CYS shall start an investigation within twenty-four hours of receiving a report of suspected child abuse. 23 Pa.C.S. § 6368(a). The agency shall determine whether this report is founded, indicated, or unfounded within thirty days, and if CYS fails to do so, DPW is authorized to inquire

2. Section 6341(a)(2) of the Law allows the subject of a child abuse report to request that the Secretary of DPW amend, seal, or expunge a report in the central register on grounds of inaccuracy or improper maintenance of records. Section 6303 of the Law defines "subject of the report" as the child, parent, guardian, or other person responsible for the child's welfare named in the report.

into the performance of the local agency. 23 Pa.C.S. §§ 6368(c) and 6343(a). If, however, the CYS investigation:

[D]oes not determine within 60 days of the date of the initial report of the instance of suspected child abuse that the report is an indicated report or an unfounded report, or unless within that same 60–day period court action has been initiated and is responsible for the delay, the report shall be considered to be an unfounded report, and all information identifying the subjects of the report shall be expunged within 12 months.

23 Pa.C.S. § 6337(b).

M.A.A. argued that the initial report of suspected child abuse occurred or should have occurred on April 27, 1988, when the child was first brought to CYS, thus requiring CYS to determine the status of this report within sixty days thereafter. CYS did not determine that the report was indicated until July 26, 1988, well beyond sixty days from the initial April interview. According to M.A.A.'s argument, CYS' late filing would then require DPW to declare this report unfounded as of June 27, 1988, to be expunged within twelve months.

The hearing officer agreed with M.A.A. on this issue of timing, and recommended on November 21, 1990, that M.A.A.'s report be declared unfounded and expunged. The hearing officer made findings of fact concerning the identity of the parties involved and the chronology of events, but because he found the CYS investigation to be untimely and ordered expungement, he did not make any credibility determinations or address the substantive issues of the case in his November 1990 decision.

On December 3, 1990, the Director of the Office of Hearings and Appeals, acting as the agent of the Secretary of DPW, rejected the hearing officer's recommendation to expunge, and remanded the case to the hearing officer to enter a decision on the merits. In her order the director explained that DPW "does *not* accept a report of suspected child abuse from the local Child Protective Service (CPS) agency unless a specific perpetrator is named in the report," citing *DPW Social Ser-*

*vices Memorandum,* # 49–79. (Emphasis in original.) In addition, the director noted that DPW regulations specify that if the CPS does not file its investigation report with ChildLine "within 60 days of receipt of the report by ChildLine, the report shall be unfounded." 55 Pa.Code § 3490.69.

Therefore, in this case, the sixty-day period for CYS to file its investigation report did not begin until June 8, 1988, when the agency reported the suspected sexual abuse of M.A. to ChildLine, naming M.A.A. as the perpetrator, which the child had revealed to her counselor just one day earlier. When CYS filed the report as "indicated" on July 26, 1988, it was well within the sixty-day period, thus denying M.A.A.'s argument for expungement on the basis of CYS' untimely investigation.

On remand the same hearing officer recommended again that M.A.A.'s request for expungement be granted because of CYS' late filing, and again the hearing officer failed to address the substantive issues in this case. The hearing officer's second recommendation, dated May 20, 1991, was identical to his earlier decision, except that in this decision he noted that ChildLine's procedure of not accepting complaints where the perpetrator is unknown was problematic, because it allowed prolonged CYS investigations. On June 18, 1991, the new Acting Director of the Office of Hearings and Appeals affirmed the hearing officer's recommendations and ordered CYS to expunge M.A.A.'s report from the central register. CYS then petitioned this court for review, and M.A.A. intervened in the appeal.

Our court must affirm the adjudication of the Office of Hearings and Appeals unless it is in violation of constitutional rights, an error of law was committed, or a factual finding necessary to support the decision is not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

■ We agree with CYS that DPW erred as a matter of law when its Office of Hearings and Appeals accepted the hearing officer's May 1991 recommendation to expunge M.A.A.'s indi-

cated report because of CYS' untimely investigation. The Law, DPW regulations, and written policies contemplate child protective service investigations that begin when suspected child abuse *by an identified perpetrator* is reported to Child-Line, at which time the local agency has a maximum of sixty days to determine whether the report is founded, indicated, or unfounded. The penalty for CYS' delay is to render an initial report unfounded if its status is not determined within sixty days. DPW then orders unfounded reports to be expunged within twelve months. 23 Pa.C.S. § 6337(b).

In section 6303 of the Law, child abuse is defined as serious physical or mental injury, sexual abuse, or serious neglect of a child "caused by the acts or omissions of the child's parents or by a person responsible for the child's welfare, or any individual residing in the same home as the child, or a paramour of the child's parent." Because identification of a possible perpetrator listed within that section's classes of persons is necessary to constitute child abuse as the Law thus defines it, a tentative identification of a perpetrator is crucial for authorizing the agency to act. Section 6331 of the Law directs DPW to establish a "pending complaint file" for reports under investigation, and a "Statewide central register" for all founded and indicated reports. The pending complaint file also contains unfounded reports waiting to be expunged. 55 Pa. Code § 3490.33.

Section 6334 of the Law divides the complaints received by DPW into two general types. 1) If DPW receives a "complaint of suspected child abuse," it must notify the appropriate CPS of the complaint's substance and inform them if the "subject of the report" is currently listed in the pending complaint file or central register. Again, "subject of the report" includes both the child and the perpetrator in its definition. 2) If the complaint does not suggest suspected child abuse but does suggest a need for social services or investigation, DPW shall transmit the necessary information to CYS. Importantly, the Law goes on to state, "The information shall not be considered a child abuse report unless the agency to which the information was referred has reason to

believe after investigation that abuse occurred." 23 Pa.C.S. § 6334(b).

At the June 1989 hearing, the CYS casework supervisor testified that on April 27, 1988, CYS had only a "report that the child was acting out sexually and making these statements. We had no clear indication of a perpetrator before the June 8th date," when CYS filed a complaint of suspected child abuse with ChildLine.

Finally, the Law provides a list of the information that the central register shall contain, including:

> (1) The *names*, Social Security numbers, age and sex of the *subjects* of the reports.
>
> . . . .
>
> (6) The *name and relationship* to the abused child of the person or persons responsible for causing the abuse.

23 Pa.C.S. § 6336(a)(1) and (6) (emphasis added). Similarly, only information permitted in the central register may be retained in the pending complaint file. 23 Pa.C.S. § 6335(a).

Thus, the Law, supported by DPW regulations,[3] and official policy statements requires the perpetrator of the abuse to be identified before a complaint of suspected child abuse can be registered with ChildLine.

In this case, the identity of M.A.'s abuser was not known until June 7, 1988, at which time CYS filed a report of suspected child abuse with ChildLine and completed its investigation within sixty days thereafter. M.A.A.'s request for expungement on the basis of untimely investigation should have been denied by the hearing officer on remand, and by the Office of Hearings and Appeals in June 1991, and DPW committed an error of law by not ruling accordingly.

3. DPW regulations echo the provisions in the Law relating to the definition of child abuse (55 Pa.Code § 3490.4), the pending complaint file and central register (55 Pa.Code § 3490.33), the types of referrals DPW can make to CYS for both suspected child abuse and general need for services (55 Pa.Code § 3490.32), the information to be included in the pending complaint file and central register (55 Pa.Code §§ 3490.18 and 3490.34), and the time in which CYS must investigate reports of suspected child abuse (55 Pa.Code §§ 3490.34 and 3490.69).

Although the hearing officer was persuaded by M.A.A.'s argument that the sixty-day time limit for CYS investigations should begin when the initial referral to the agency was made, rather than when the complaint of suspected child abuse with a known perpetrator was reported to ChildLine, we are not. There is no evidence in the record or legal support for M.A.A.'s speculation that CYS' interpretation of the time limits for investigations has produced or will produce ongoing, unnecessary scrutiny of suspected perpetrators by children's protective services, nor does the absence of an identified perpetrator relieve CYS of its duty to investigate, protect, and provide services for possible child abuse victims in a timely fashion. As this court stated in *Cruz v. Department of Public Welfare*, 80 Pa.Commonwealth Ct. 360, 369, 472 A.2d 725, 730 (1984), where the court considered a question of time limits for child abuse investigations in another context, "The time limits prescribed by the statute were obviously intended for the protection of the child, not to shield the alleged abuser." *See also*, 23 Pa.C.S. § 6302.

Furthermore, DPW's policy is sound in not imposing a time limit on child abuse investigations until a perpetrator is identified because the alternative would encourage hasty investigations by child abuse agencies, based on less than a *prima facie* case.

CYS also argues that the Office of Hearings and Appeals abused its discretion by not adhering to the Director's earlier order to deny M.A.A.'s request for expungement, and by failing to address the substantive issues of this case on remand, and we agree. Furthermore, because neither the hearing officer nor the Office of Hearings and Appeals has yet addressed the questions of whether substantial evidence exists to support the findings that M.A.A. sexually abused M.A., whether the touching alleged here by CYS meets the definition of child abuse, or if DPW is maintaining its records improperly, we must remand this case yet again for the hearing officer to make findings of fact and conclusions of law on the merits of this appeal.

In *G.S. v. Department of Public Welfare*, 104 Pa.Commonwealth Ct. 84, 521 A.2d 87 (1987), this court determined that the Office of Hearings and Appeals and not the hearing officer is the ultimate finder of fact in child abuse expungement cases, because the Office of Hearings and Appeals is the Secretary's designee. Thus, the Secretary or the Office of Hearings and Appeals may reject the recommendations of the DPW hearing officer. *Id.*, 104 Pa.Commonwealth Ct. at 89, 521 A.2d at 89.

Therefore, in her December 1990 order, the Director of the Office of Hearings and Appeals had the authority to reject the hearing officer's recommendations, and to remand for further findings. When the hearing officer ignored this order on remand, he abused his discretion. Furthermore, because the Acting Director of the Office of Hearings and Appeals adopted the hearing officer's second recommendation, to expunge the report for untimeliness, neither the hearing officer nor the Office of Hearings and Appeals has ever made findings of fact or conclusions of law on whether substantial evidence exists to support the allegations of abuse in this case. Because we cannot make findings of fact in appeals from administrative agencies, we must remand for further findings on the crucial issues in this case. *Shoemaker v. Unemployment Compensation Board of Review*, 138 Pa.Commonwealth Ct. 403, 588 A.2d 100 (1991).

Accordingly, we reverse and remand.

## ORDER

NOW, June 12, 1992, the order of the Department of Public Welfare, Office of Hearings and Appeals, File No. 21–88–149, CL No. 21–02088, dated June 18, 1991, is reversed and this case is remanded to the Office of Hearings and Appeals for further findings on the merits of the substantive issues presented.

Jurisdiction relinquished.

BARRY, Senior Judge, dissenting.

I respectfully dissent from the majority's decision that 23 Pa.C.S. § 6337(b) does not require that the suspected child

abuse report at issue here be deemed unfounded and subject to expungement within twelve months. The CYS referral notes which summarized the initial contact on April 27, 1988 contain the following entries:

On 4–27–88 —— were in this office to make a referral regarding possible sexual abuse of [M.A.], age 4. M.A. lives with her mother.... M.A. visits with her father every weekend and about a year ago she was bleeding vaginally and said 'daddy plays with my kitty.' The referral was made to Cumberland County Children and Youth Services then. They now stated that she does not want to go with her father and she plays with herself and she told another child 'daddy says it feels good.' (Since alleged abuse took place in this county it was decided the case would be carried in this county). On 4–27–88 Wendy Hoverter interviewed M.A. with Eileen West present. M.A. said she and her father sleep together. She was shown the automically [sic] correct dolls and she showed these workers the dolls lying side by side. She played with the dolls otherwise and showed them at times on top of each other. She said that her father doesn't touch her on her 'kitty'. Wendy Hoverter then spoke with —— and M.A. and —— attempted to have M.A. tell worker about 'daddy.' M.A. would not say anything.

Wendy had requested some information that —— had to leave office to get. After Wendy interviewed M.A., they still had not returned to office. So Eileen watched M.A. in an interviewing room until they returned. Eileen's observations are as follows: She and M.A. talked about colors and shapes. When talking about 'round' and things that are round, worker mentioned balloons and lollipops and asked M.A. if she liked lollipops. M.A. looked at the worker strangely at this question. —— later stated M.A. told her she plays 'the lollipop game' with her father. M.A. would not respond to questions regarding this.

(DPW Hearing, Exhibit A–2) (—— represents the name(s) of the individual(s) who brought M.A. to the CYS office on 4–27–

88, those name(s) were expunged from the records introduced at the hearing.)

This summary of what occurred on April 27, 1988, indicates that CYS had more than enough information to determine that the father was the alleged perpetrator of the alleged sexual abuse of M.A. on that date. The hearing officer determined that CYS knew that the father was the alleged perpetrator and relied not only on the above quoted summary but on the fact that the CYS investigation focused on the father "from day 1 (i.e. April 27, 1988)." (Adjudication, May 20, 1990, p. 7.)

CYS treated this case as one which involved suspected child sexual abuse from the beginning. In compliance with 23 Pa.C.S. § 6368(a) it began an investigation immediately following the April 27th initial report. Its own records indicate that it knew on that date that the case involved an allegation of sexual abuse and that the father was the alleged perpetrator. The ensuing investigation focused exclusively on the father's activities and interaction with M.A. The subsequent characterization of the April 27th referral as a "general referral" with no obligation to treat it as a report of sexual abuse which must be reported to ChildLine has no basis in fact.

The April 27, 1988 interview at the CYS offices gave CYS enough information to comply with the requirement of 23 Pa.C.S. § 6313(b) that if a Child Protective Service, which CYS admittedly is, initially receives a report of suspected child abuse, DPW must be notified within twenty-four hours. Thus, because the CYS investigation failed to determine within sixty days of April 27, 1988, whether the report was indicated or founded, "the report shall be considered to be an unfounded report, and all information identifying the subjects of the report shall be expunged within 12 months." 23 Pa.C.S. § 6337(b).

Moreover, the majority errs when it decides that the sixty day period referred to in Section 6337(b) is not triggered until a report is filed with ChildLine. ChildLine is "[a]n organizational unit of the Department which operates a Statewide toll-free system for receiving reports of suspected child abuse...." 55 Pa.Code § 3490.4. The statute, however,

allows reports to be made to either DPW or to a child protective service. 23 Pa.C.S. § 6313(a). Here, a report which alleged suspected child sexual abuse was made on April 27, 1988 to CYS, clearly a child protective service.[1] While CYS was statutorily required to immediately notify DPW of the report,[2] this obligation to inform DPW of the report's existence does not mean there is no report until DPW is so notified. The April 27, 1988 report at the CYS office is the initial report referred to in Section 6337(b).

Alternatively, assuming that CYS could not identify the alleged perpetrator on April 27, 1988, and that the April 27, 1988 interview at the CYS offices was not the initial report, the DPW policy that reports will not be accepted by ChildLine unless an alleged perpetrator is named is invalid because it is in derogation of the statute. The purpose of the statute is to encourage more complete reporting of child abuse. 23 Pa.C.S. § 6302(b). DPW's policy to not accept reports unless an alleged perpetrator is identified defeats that policy by creating a class of abuse cases, i.e., those where abuse is suspected by an unknown perpetrator, which cannot be reported because ChildLine will not accept those reports.

More importantly, the statute mandates that any oral report made by a person required to report under Section 6311[3] dictates that an oral report be followed within forty-eight hours by a written report. 23 Pa.C.S. § 6313(a). That written report shall include "[t]he name of the person or persons responsible for causing the suspected abuse, *if known.*" 23 Pa.C.S. § 6313(c)(5) (emphasis added).[4] This clearly indicates

1. The November 21, 1988 letter from DPW's Office of Children Youth and Families to the Office of Hearing and Appeals which requested that a hearing be scheduled in this matter lists CYS as the Child Protective Service Agency in this matter.

2. 23 Pa.C.S. § 6313(b).

3. Because the CYS summaries have been sanitized, we are unable to determine if the person(s) who reported the abuse to CYS on April 27, 1988 were required to do so under Section 6311.

4. Admittedly, a report may not be entered in the statewide register until an alleged perpetrator has been identified. 23 Pa.C.S. § 6336(a)(6). By definition, however, ChildLine is not the Statewide Central Register. 55 Pa.Code § 3490.4. Further, reports are only entered in the state-

the General Assembly's intent that all cases of suspected child abuse be reported regardless of whether the alleged perpetrator can be identified. To the extent that ChildLine refuses to accept such reports unless the alleged perpetrator is identified, it operates in contravention of the expressed legislative intent.

Finally, this interpretation of the statute will not lead to incidents of abuse which should be included in the Statewide Central Register as indicated or founded reports inevitably being considered unfounded and expunged. The regulations specifically require CYS, as a child protective service, to file a new report with ChildLine when additional information surrounding an incident becomes available. 55 Pa.Code § 3490.-67(b). Thus, when a child protective service which has received a report of suspected child abuse which does not identify the alleged perpetrator obtains information identifying that person, a new report must be filed. If, after investigation, it is determined that this new report is founded or indicated, it may be entered in the Statewide Central Register.

The decision of the Office of Hearing and Appeals should be affirmed.

wide register after it has been determined that they are founded or indicated. 23 Pa.C.S. § 6331(2). Until a determination has been made, the reports are placed in the pending complaint file. 23 Pa.C.S. § 6331(1). It is not inconsistent to maintain reports which do not identify the alleged perpetrator in the pending complaint file while requiring that the perpetrator be identified when a report is founded or indicated and entered in the Statewide Central Register.